NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3351
_____

SANDRA BROWN-BAUMBACH,
Appellant

v.

B&B AUTOMOTIVE, INC.
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action No. 09-cv-3962)
District Judge: Honorable R. Barclay Surrick
_____

Submitted Under Third Circuit LAR 34.1(a)
April 28, 2011
_____

Before: SLOVITER, GREENAWAY, JR., and ROTH, Circuit Judges

(Opinion Filed: June 17, 2011)

_____

OPINION
_____

GREENAWAY, JR., Circuit Judge

Sandra Brown-Baumbach ("Plaintiff") appeals from the District Court's grant of

1

summary judgment in favor of B&B Automotive, Inc. ("Defendant" or "B&B") on her claims of sexual harassment based on a hostile work environment, gender discrimination, and retaliation. For the reasons set forth below, we will affirm the District Court's decision on the gender discrimination and retaliation claims, and reverse and remand for further proceedings on the hostile work environment claim. We conclude that Plaintiff has demonstrated that genuine issues as to material facts exist on the hostile environment claim, precluding the grant of summary judgment.

## I. Background Facts

We write primarily for the benefit of the parties and recount only the essential facts.

Plaintiff was hired by B&B in May 2008 as an assistant business manager, responsible for loan financing. Plaintiff was supervised by Frank Beyer, as well as Michael Brill, the owner of B&B. (App. 82.) B&B is a used car sales lot, located in a former gas station. According to Plaintiff's deposition testimony, she sometimes worked from a cubicle by herself, and sometimes shared a desk with Mr. Beyer. (App. 84.)

As set forth in detail in the District Court's opinion, Plaintiff's complaint is based on a series of events that occurred during her four month tenure with B&B. These events included jokes with sexual overtones made about Ms. Brown-Baumbach; comments made in Ms. Brown-Baumbach's presence that had a sexual connotation; comments made about Ms. Brown-Baumbach that were sexual in nature; rumors about Ms. Brown-Baumbach of a sexual nature; berating and insulting remarks directed at Ms. Brown-

2

Baumbach and other women based on their gender; and rude conduct by another female employee directed at Ms. Brown-Baumbach, allegedly based on Ms. Brown-Baumbach's gender.

*Sexual jokes about Plaintiff*

The jokes included an incident involving ice cream being spilled on her clothes, resulting in a male co-worker joking that he had made her so excited, "she creamed her pants." [1] (App. 109.) Plaintiff referenced a secretary's comment about Ms. Brown-Baumbach and her supervisor "getting busy"[2] as another example of co-workers making sexual jokes at her expense. (App. 111.)

*Remarks with a sexual connotation*

Ms. Brown-Baumbach alleged that, in her presence, Larry Knorr, a co-worker, commented to a female customer that he wanted to take her dancing and that "he swung both ways." (App. 94.) Ms. Brown-Baumbach also commented that Mr. Knorr "talked dirty" to female customers.[3] (App. 101.) Additionally, she cited a suggestion by a

---

[1] The definition in Urban Dictionary for "creamed my pants" is "[t]o have a spontaneous orgasm upon viewing something of exceptional awesomeness." *Urban Dictionary*, http://www.urbandictionary.com/define.php?term=to+cream+my+pants (last visited June 7, 2011).

[2] The definition in Urban Dictionary for "to get busy" is "to have sex." *Urban Dictionary*, http://www.urbandictionary.com/define.php?term=get+busy (last visited June 7, 2011.

[3] The record is clear that Ms. Brown-Baumbach was in the room with Mr. Knorr and the female customer to whom he made the dancing comment. With regard to the

3

supervisor that if Ms. Brown-Baumbach's cousin wore heels and dressed attractively for her upcoming job interview, she would automatically be hired. (App. 113.) On another occasion, when a stripper entered the dealership to purchase a car, Ms. Brown-Baumbach's supervisor stated to Ms. Brown-Baumbach that "Heels really turn me on. What do you think she has in the trunk?" (App. 114.) When the stripper purchased a new car, the supervisor assisted in moving her belongings from the old car to the new car. While doing this, her supervisor found a pair of "stripper heels" in the back seat. (Id.) He held them up to the window to show them to Ms. Brown-Baumbach, saying "Sandy, look, these are what turn me on." (Id.)

*Sexual comments about Plaintiff*

Examples of sexual comments made about Ms. Brown-Baumbach include a text message sent by Ms. Brown-Baumbach's supervisor to a co-worker asking if Ms. Brown-Baumbach was wearing underwear one day,[4] and a suggestion made directly to her by another supervisor that she come work for him since he "needed an attractive woman" at his location. (App. 112.)

*Sexual rumors*

Ms. Brown-Baumbach referenced a rumor that began circulating throughout the entire office indicating Ms. Brown-Baumbach and a co-worker, Joe Nasito, were sleeping

---

other occasions when Mr. Knorr allegedly "talked dirty" to female customers, it appears that Ms. Brown-Baumbach was nearby when these comments were made.

[4] Ms. Brown-Baumbach learned of the text message when the recipient of the text

4

together.  (App. 104.)  Ms. Brown-Baumbach denied that they had a romantic relationship, but said they commuted together and talked about their respective relationship problems.  (App. 105.)

*Berating and insulting remarks*

When Ms. Brown-Baumbach complained to Michael Brill, the owner of B&B, about the rumor involving her and Mr. Nasito, Mr. Brill responded that "perception is everything," (App. 105), and stated that he would be concerned what people thought of his daughter if she gave a male co-worker a ride to work (App. 104).  On other occasions, Mr. Brill called Ms. Brown-Baumbach a "mother fucking bitch," (App. 99), told her that she was saying "fucking nonsense," (App. 98), told her to pack up her "fucking shit and leave," (App. 119), and to "get the fuck out of his office" (App. 98).  Additionally, Ms. Brown-Baumbach stated that, on another day, Mr. Brill said "that if any of us women shed a tear in his office, consider us automatically terminated."  (App. 120.)

*Rude conduct by other women*

Ms. Brown-Baumbach testified that Theresa Martin, a female co-worker, had allegedly gotten other female employees fired, and that Ms. Martin treated her and other female employees rudely.  (App. 95.)  For example, Ms. Brown-Baumbach stated that Ms. Martin would throw her paperwork on the floor.  (App. 96.)  Ms. Brown-Baumbach asserted that Ms. Martin did not treat her male coworkers in a similarly rude, disrespectful, or hostile manner.  (App. 96.)

---

message showed it to her.

5

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction, pursuant to 28 U.S.C. § 1331. We have jurisdiction, pursuant to 28 U.S.C. § 1291.

Our standard of review applicable to an order granting summary judgment is plenary. Huston v. Proctor & Gamble Paper Products Corp., 568 F.3d 100, 104 (3d Cir. 2009) (citing Knabe v. Boury Corp., 114 F.3d 407, 410 n.4 (3d Cir. 1997)). "We may affirm the order when the moving party is entitled to judgment as a matter of law, with the facts viewed in the light most favorable to the non-moving party. Further, '[w]e may affirm the District Court on any grounds supported by the record.'" Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009) (quoting Nicini v. Morra, 212 F.3d 798, 805-06 (3d Cir. 2000) (en banc)). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

## IV. Analysis

A. Hostile Work Environment

To establish a hostile work environment claim against an employer, a plaintiff must prove the following: "(1) the employee suffered intentional discrimination because of [his or her] sex, (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position, and (5) the

6

existence of respondeat superior liability."[5] <u>Weston v. Pennsylvania</u>, 251 F.3d 420, 426 (3d Cir. 2001) (quoting <u>Andrews v. City of Phila.</u>, 895 F.2d 1469, 1482 (3d Cir. 1990)).

In assessing the evidence presented, we must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required." <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 23 (1993); <u>see</u> <u>also</u> <u>Caver v. City of Trenton</u>, 420 F.3d 243, 262 (3d Cir. 2005) ("In determining whether the conduct at issue is sufficiently extreme, we consider the 'totality of the circumstances.'" (quoting <u>Andrews</u>, 895 F.2d at 1482)).

However, not every sexual comment, action or joke creates a hostile work environment. That is, "[t]he mere utterance of an epithet, joke, or inappropriate taunt that

---

   [5] "We have often stated that discriminatory harassment must be 'pervasive and regular.' But the Supreme Court's standard is 'severe *or* pervasive.' The difference is meaningful, and the Supreme Court's word controls, so we use the severe or pervasive standard here." <u>Jensen v. Potter</u>, 435 F.3d 444, 449 (3d Cir. 2006) (internal citations omitted), <u>overruled in part on other grounds by</u> <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53 (2006). <u>See</u> <u>also</u> 2 Charles A. Sullivan & Lauren M. Walter, <u>Employment Discrimination Law and Practice</u> § 7.07[A] (4th ed. 2009) ("The more objectionable the conduct, the less of it will suffice to be actionable; the more innocuous the conduct, the more is required to 'contaminate' the work environment.").

may cause offense does not sufficiently affect the conditions of employment to implicate Title VII liability." Weston v. Pennsylvania, 251 F.3d 420, 428 (3d Cir. 2001). The Supreme Court has noted that "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher v. Boca Raton, 524 U.S. 775, 788 (1998) (quoting Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75, 82 (1998))

Here, the District Court analyzed the ten incidents upon which Plaintiff's case is based by considering whether the conduct was "targeted at Plaintiff because she was a woman." (App. 14.) According to the District Court, "[a]t all times, ''[t]he critical issue' that remains is 'whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.''" (App. 14-15 (quoting Oncale, 523 U.S. at 80).) While these standards are correct, the District Court's application of them to the facts of this case is flawed. For example, the District Court reasoned that the impact of the rumors about Plaintiff sleeping with a co-worker were equally offensive to both Plaintiff and the male co-worker. This conclusion disregards the reality that "traditional negative stereotypes regarding the relationship between the advancement of women in the workplace and their sexual behavior stubbornly persist in our society." Spain v. Gallegos, 26 F.3d 439, 448 (3d Cir. 1994).

Although the rumors in the present case do not implicate the stereotype of a woman using her sexuality to gain favor with a supervisor, as occurred in Spain v. Gallegos, the present rumors nonetheless contribute to the full panoply of events that

could be considered as contributing to the hostile work environment.  In fact, the rumors constitute only one of at least ten incidents cited by Plaintiff in support of her claim.

Mr. Brill's reaction to Plaintiff's complaint to him about the rumors and their impact on her supports the inference that Plaintiff was being treated differently based on her gender.  Upon hearing Plaintiff's complaint, he chastised her for commuting with a man.  Specifically, he noted "perception is everything" and that he would worry about what people would say if his daughter drove a male co-worker to work.  (App. 104-05.) "[H]ostile or paternalistic acts based on perceptions about womanhood or manhood are sex-based or 'gender-based.'"  Durham, 166 F.3d at 148.

Additionally, the District Court parsed out each event, explaining how and why the separate incidents did not demonstrate that a hostile work environment existed.[6]  The District Court concluded that the various incidents, viewed separately, amounted to nothing more than "mere offensive utterances" that were "sporadic" and essentially amounted to nothing more than "the ordinary tribulations of the workplace."  (App. 17 (quoting Harris, 510 U.S at 23 and Faragher, 524 U.S. at 788).)  We do not agree.

"The facially neutral mistreatment plus the overt sex discrimination, both sexual and non-sexual, in sum constituted the hostile work environment."  Durham, 166 F.3d at 148.  Here, the comments and conduct similarly ranged from the offensive (the

---

[6]  Parsing out the incidents is contrary to both Supreme Court and our precedent which require that the events be viewed in their totality.  Harris, 510 U.S. at 23; Caver, 420 F.3d at 262-63; Cardenas, 269 F.3d at 260-61.

underwear text message, the "cream her pants" comment, and the reference to Plaintiff as a "mother fucking bitch") to the facially neutral (Theresa Martin throwing Plaintiff's paper work on the floor).

Considering this range of incidents, combined with their frequency over a span of only four months,[7] we are unable to conclude, as a matter of law, that they simply constitute "ordinary tribulations of the workplace." Rather, we conclude that sufficient evidence exists to create genuine issues as to material facts, thus precluding the grant of summary judgment.

B. Gender Discrimination

In order to establish a prima facie case of gender discrimination, a plaintiff must show that (1) she is a member of a protected class; (2) she is qualified for the position in question; (3) she suffered an adverse employment action; and (4) circumstances exist that give rise to an inference of unlawful discrimination in that similarly situated male employees were treated more favorably. See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981); Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 539 (3d Cir. 2006). Once a plaintiff establishes a prima facie case, the familiar burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792

---

[7] Establishing the exact frequency of these incidents is difficult to discern from the record before us. However, it appears that the incidents started in June, and continued until August. Given the number of incidents described by Ms. Brown-Baumbach, it seems that she was exposed to some form of sexually offensive conduct on at least a weekly basis.

10

(1973) comes into play, and the defendant would be required to offer a non-discriminatory reason for its adverse action.

Here, Plaintiff failed to establish a prima facie case of gender discrimination. Assuming, arguendo, that she satisfied the first three elements of the prima facie case, Plaintiff failed to present any evidence that similarly situated males were treated more favorably than she was. Therefore, we will affirm the District Court's decision to grant summary judgment on this claim.

## C. Retaliation

In order to establish "a prima facie case of retaliation, a plaintiff must show that: (1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000). As explained in the District Court's opinion, Plaintiff did not establish a causal link between her alleged constructive discharge and her reporting of the alleged discrimination to her superiors. We find that Plaintiff failed to establish a prima facie case of retaliation. We will affirm the District Court's grant of summary judgment on this claim.

## V. Conclusion

For the reasons set forth above, we conclude that genuine issues as to material facts exist regarding the claim of sexual harassment based on a hostile work environment,

11

thus precluding the grant of summary judgment. We will reverse and remand the District Court's decision on that claim. On the other hand, we will affirm the District Court's decision on the claims of gender discrimination and retaliation.