BLD-081                                                NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4092
_____

KEVIN D. CARTER,
                                        Appellant

v.

MIDWAY SLOTS AND SIMULCAST;
HARRINGTON RACEWAY AND CASINO
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 1:09-cv-00493)
District Judge:  Honorable Sue L. Robinson
_____

Submitted for Possible Summary Action
Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
January 4, 2013

Before:  SCIRICA, HARDIMAN and GREENAWAY, JR., Circuit Judges

(Opinion filed: January 22, 2013)
_____

OPINION
_____

PER CURIAM

        Kevin Carter, proceeding pro se, appeals from an order of the United States

District Court for the District of Delaware granting Appellees' motion for summary

judgment. Because this appeal does not present a substantial question, we will summarily affirm the District Court's order. See 3d Cir. L.A.R 27.4; I.O.P. 10.6.

I.

Because we write primarily for the parties, we need only recite the facts necessary for our discussion. Appellees hired Carter as a security officer in 2001. In April 2005, Carter was promoted to dual rate lead officer. On June 22, 2005, a shift supervisor found Carter sleeping on the job twice during one shift. Carter did not deny sleeping, and the supervisor issued him a final warning.

In November 2005, security officer Dean told Carter that lead officer Malin had used a racial slur in front of him. Two months later, Carter reported the incident to Saxon, the Director of Human Resources. Malin denied the accusation, and Carter and Dean provided Saxon with the names of three employees who could confirm Dean's report. One employee, West, noted that she had previously heard Malin use a racial slur in reference to Carter. In July 2006, Carter was promoted to lead security officer. Prior to making the decision, Saxon conferred with Carter's supervisors, and Malin supported Carter's promotion to lead officer.

On three separate dates in October 2006, four security officers observed Carter sleeping during his shift. One officer reported to Malin that Carter had not answered a radio page. Carter received a one-day suspension. He disputed the suspension and stated that, although he napped during his breaks, he did not sleep while on duty. Carter filed a charge of discrimination with the Equal Employment Opportunity Commission

2

("EEOC") on December 6, 2006, alleging race discrimination and retaliation beginning on October 1, 2005, and ending on November 17, 2006. According to Carter, he was discriminated against and harassed after reporting incidents of the use of racial slurs, reporting previous employment discrimination, and being disciplined for infractions that were routinely ignored.

On January 17, 2007, security operations supervisor Rockwell issued a memorandum prohibiting any security team member from sleeping in any area frequented by or visible to patrons while on either scheduled breaks when clocked in or during scheduled meal breaks when clocked out. During the Delaware State Fair in July 2007, Carter was responsible for supervising security officers assigned to patrol the exterior of the facility. On July 21, 2007, supervisor Kiser heard Malin radio Carter but noted that reception was not great because of the distance between the two. According to Malin, three security officers who reported to Carter were unable to reach him via radio for a two-hour period. Security officer Carey and Malin saw Carter asleep in his truck in the parking lot. Malin sent Carter home for the day.

On July 24, 2007, Carter sent a memorandum to Lewis, head of the security department, advising that he had been unable to take a lunch break and that he was taking his break in his truck when Kiser arrived. He stated that he always answered radio or phone calls while on break. After an investigation, Saxon concluded that the version of events given by Malin and other officers was accurate. Carter was terminated on July 26, 2007, for repeatedly sleeping while on duty. He filed a charge of discrimination with the

3

EEOC on October 31, 2007, asserting that he was discharged in retaliation for filing his previous charge of discrimination.  He further alleged that similarly situated employees engaged in similar conduct but were not discharged.

On July 7, 2009, Carter filed his complaint alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5.  On September 23, 2011, the District Court denied Appellees' motion to dismiss for failure to prosecute.  After conducting discovery, Appellees filed a motion for summary judgment on July 3, 2012.  The District Court granted Appellees' motion on September 28, 2012.  Carter then timely filed this appeal.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and exercise plenary review over the District Court's order granting summary judgment.  See Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009).  Summary judgment is appropriate only when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The moving party has the burden of demonstrating that there is no genuine issue as to any material fact, and summary judgment is to be entered if the evidence is such that a reasonable fact finder could find only for the moving party."  Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000) (citing Anderson  v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  We may summarily affirm if the appeal does not present a substantial question, and may do so on

any basis supported by the record.  Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam).

III.

In his complaint, Carter alleges discrimination based upon race, color, and national origin.  Upon review of the record, we conclude that the District Court correctly granted Appellees' motion for summary judgment.

As an initial matter, a plaintiff initiating an employment discrimination suit under Title VII must first exhaust his remedies by complying with the procedural requirements set forth in 42 U.S.C. § 2000e-5.  These requirements include filing a charge with the EEOC within 180 days of the alleged unlawful employment practice.  See 42 U.S.C. § 2000e-5(e)(1); Burgh v. Borough Council of Borough of Montrose, 251 F.3d 465, 472 (3d Cir. 2001).  Here, Carter failed to comply with this requirement to the extent that his complaint raised claims of discrimination based on his national origin.  Therefore, because this claim was not brought to the attention of the EEOC and accordingly did not fall within the scope of its investigation, the District Court properly dismissed Carter's claim of discrimination based upon national origin as unexhausted.  See, e.g., Webb v. City of Phila., 562 F.3d 256, 262-63 (3d Cir. 2009).

As his first exhausted claim, Carter alleges that he experienced discrimination based upon his race.  Because Carter lacks direct evidence of such discrimination, his claim falls under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under this framework, he has the burden of establishing a

5

prima facie case of discrimination by proving that (1) he is a member of a protected class; (2) he suffered some form of adverse employment action; and (3) this action occurred under circumstances giving rise to an inference of unlawful discrimination that might occur when nonmembers of the protected class are treated differently. See Goosby v. Johnson & Johnson Med., 228 F.3d 313, 318 (3d Cir. 2000); Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999). Once a plaintiff establishes a prima facie case, the employer must provide a legitimate, non-discriminatory reason for the adverse employment action. See Goosby, 228 F.3d at 319. If the employer meets this burden, the burden again shifts to the plaintiff to demonstrate that the employer's reason is pretextual. See Kautz v. Met-Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005); Jones, 198 F.3d at 412.

We agree with the District Court that Carter failed to show circumstances giving rise to an inference of unlawful discrimination based upon race. Carter alleges that five of his subordinates engaged in similar conduct but were not discharged from their employment. However, three of these individuals were disciplined for violating the attendance policy, not the policy prohibiting sleeping on the job. One subordinate, a Caucasian individual, was terminated, like Carter, for repeatedly sleeping on the job. Carter and his five subordinates were not similarly situated for Title VII purposes because they did not share the same supervisor. See Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir. 1994) (noting that, in order to show that comparators are "similarly situated," all relevant aspects of employment need to be nearly identical). Furthermore, Carter's claim that discrimination occurred because Malin was allowed to

6

confront his accusers and he was not is meritless because he and Malin did not engage in similar conduct. Accordingly, the District Court properly granted summary judgment to Appellees because Carter failed to establish a prima facie case of race discrimination.

Additionally, the District Court properly granted summary judgment to Appellees on Carter's claim regarding a hostile work environment. To establish a hostile work environment claim, Carter has the burden of proving that: (1) he suffered intentional discrimination because of his race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected him; (4) the discrimination would have detrimentally affected a reasonable person of the same race in his position; and (5) respondeat superior liability exists. See Andreoli v. Gates, 482 F.3d 641, 643 (3d Cir. 2007); West v. Phila. Elec. Co., 45 F.3d 744, 753 (3d Cir. 1995). Analysis of hostile work environment claims requires an assessment of the totality of the circumstances. Cardenas v. Massey, 269 F.3d 251, 260 (3d Cir. 2001); see also Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998) (noting that "conduct must be extreme to amount to a change in the terms and conditions of employment").

Three incidents of alleged harassment during Carter's five years of employment include: (1) an isolated statement by Malin that Carter "doesn't know anything"; (2) an isolated statement by Malin regarding Carter's failure to wear his badge while on duty; and (3) Saxon's behavior following his November 2006 meeting with Carter regarding his one-day suspension for sleeping while on duty. The record indicates that Malin used racial slurs on two occasions but never in Carter's presence. Notably, the record

7

indicates that Malin supported Carter's two promotions in April 2005 and July 2006. Even assuming that Carter's unsubstantiated allegations are true, they are insufficient to constitute the "pervasive and regular" behavior required to sustain a hostile work environment claim. Accordingly, the District Court properly granted summary judgment to Appellees.

Finally, the District Court correctly granted summary judgment for Appellees as to Carter's retaliation claims. To establish a prima facie case of retaliation under Title VII, a plaintiff must show that "'(1) []he engaged in activity protected by Title VII; (2) the employer took an adverse employment action against h[im]; and (3) there was a causal connection between h[is] participation in the protected activity and the adverse employment action.'" Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006) (quoting Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995)). An adverse action refers to "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998). Furthermore, the complainant has the burden of stating a prima facie case; if he does, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action. McDonnell Douglas Corp., 411 U.S. at 802.

Carter alleges two claims of retaliation: first, when he was written up and received a one-day suspension in October 2006 after his January 2006 report of Malin's racial statements, and second, when he was terminated in July 2007 following his report of

8

Malin's racial statements and his December 6, 2006 filing of a charge of discrimination with the EEOC. Appellees have conceded that Carter engaged in two instances of protected activity during his employment. However, we agree with the District Court that Carter has not fulfilled the third and final element of a prima facie retaliation case.

Carter needed to demonstrate a causal connection between his protected activity and the adverse action. See Marra v. Phila. Hous. Auth., 497 F.3d 286, 300 (3d Cir. 2007). This Court has noted two primary factors for this determination: timing and evidence of ongoing antagonism. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000); see also Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir. 1997) ("[T]emporal proximity . . . is sufficient to establish the causal link . . . . [A] plaintiff can [also] establish a link between his or her protected behavior and subsequent discharge if the employer engaged in a pattern of antagonism in the intervening period."). However, the "mere passage of time is not legally conclusive proof against retaliation." Robinson v. SEPTA, 982 F.2d 892, 894 (3d Cir. 1993). A plaintiff can also demonstrate a causal connection through other types of circumstantial evidence. See Farrell, 206 F.3d at 280-81.

Here, approximately ten months elapsed between the time when Carter submitted his complaint about Malin and when he was written up and given a one-day suspension in October 2006. Furthermore, approximately eight months passed between Carter's filing of a charge of discrimination with the EEOC and his termination in July 2007. Standing alone, this passage of time is insufficient to establish a causal connection between the

protected activity and the adverse action.  See, e.g., <u>Clark Cnty. Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273-74 (2001) (citing cases where the passage of three and four months between the protected activity and the adverse action was insufficient, by itself, to establish a causal connection).

"[T]iming plus other evidence [is] an appropriate test where the temporal proximity is not so close as to be 'unduly suggestive.'" <u>Farrell</u>, 206 F.3d at 280 (alteration in original).  Carter testified that Malin was the only individual who bore discriminatory animus towards him; however, the record indicates that Appellees' actions were not solely based upon Malin's observations and report.  Instead, these actions were also based upon other employees' reports, and Carter has not identified the authors of these reports as harboring any discriminatory animus.  Accordingly, the District Court properly granted summary judgment to Appellees as to Carter's retaliation claims.

IV.

For the foregoing reasons, no substantial question is presented and we will affirm the judgment of the District Court.  <u>See</u> 3d Cir. L.A.R 27.4; I.O.P. 10.6.