

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-26-2005

# Zappan v. PA Bd Probation

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3866

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Zappan v. PA Bd Probation" (2005). *2005 Decisions.* Paper 343.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/343

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-3866

_____

RONALD ZAPPAN,

Appellant

v.

PENNSYLVANIA BOARD OF PROBATION AND PAROLE;
WILLIAM WARD; JAMES ROBINSON; GARY SCICCHITANO;
EDWARD JONES; VERONICA THOMAS

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 00-cv-01409)
District Judge: Honorable Mary A. McLaughlin

_____

Argued September 27, 2005

Before: ALITO, AMBRO, and LOURIE,* Circuit Judges

(Opinion filed: October 26, 2005)

Robert J. Sugarman, Esquire (Argued)
Joseph Cohn, Esquire
Sugarman & Associates
100 North 17th Street
Robert Morris Building, 11th Floor
Philadelphia, PA   19103

_____

        * Honorable Alan D. Lourie, Circuit Judge for the United States Court of Appeals
for the Federal Circuit, sitting by designation.

Counsel for Appellant

Gino J. Benedetti, Esquire  (Argued)
Jennifer A. Parda, Esquire
Maria L.H. Lewis, Esquire
Miller, Alfano & Raspanti
1818 Market Street, Suite 3402
Philadelphia, PA   19103

Counsel for Appellees

---

OPINION

---

AMBRO, <u>Circuit Judge</u>

Ronald Zappan, a white male and former Deputy District Director of the Pennsylvania Board of Probation and Parole (the Board), filed this suit against the Board and certain of its supervisors and executives alleging he was the victim of unlawful retaliation in violation Title VII of the Civil Rights Act of 1964, the First Amendment, and the Pennsylvania Human Rights Act as a result of his refusal to assist the defendants in discriminating and retaliating against certain African-American employees under his direct supervision.  Zappan also claimed that the defendants' actions violated his rights under the Age Discrimination in Employment Act, substantive and procedural due process, and his equal protection rights.

## I.  Facts and Procedural History

The facts recited in the light most favorable to Zappan are as follows.   He began his employment with the Board on January 30, 1972, as a parole agent.  In April 1990,

2

Zappan was promoted to Deputy District Director of the Board's Philadelphia District, a position he held until his retirement effective August 28, 1998. In March 1995, defendant Willie E. Jones was promoted by the Board to Deputy District Director of the Board's Allentown District. Zappan and several others challenged the selection procedure used by the Board to promote Jones by filing an appeal with the State Civil Service Commission. Specifically, Zappan challenged the geographic restriction imposed by the Board on the job opening, as it precluded him and the other individuals bringing the appeal from competing for the job. The Commission held a hearing on the issue during which Zappan testified. In June 1996, the Commission found that the procedure used to promote Jones was improper and, as a result, removed him as the Allentown District's Deputy District Director.

In April 1997, the Board installed Jones as the Philadelphia District Director, a position that required him to serve as Zappan's direct supervisor. Zappan claims that in late 1997 Jones requested that he assist Jones in a pattern of discriminatory retaliation by imposing disciplinary action on several of Zappan's African-American subordinates who had previously brought suit against the Board and various Board personnel, including Zappan, for systematic racial discrimination and retaliation. Specifically, Zappan testified that Jones demanded he initiate disciplinary proceedings against, or terminate the employment of, any individual under his watch who was not performing his job to standard. Zappan alleges that Jones' demands were directed at Parole Supervisor Henry

3

Watkins, Parole Agent Howrhu Self, Parole Supervisor Darryl Rankin, and Parole Supervisor Hugh Young. Watkins, Self, and Rankin are African-American. Young is Caucasian. Moreover, Watkins, Self, and Rankin were plaintiffs in the aforementioned race discrimination lawsuit.

Zappan informed Veronica Thomas, Eastern Regional Director of Board, James Robinson, Director of the Board, and Gary Scicchitano, Director of the Bureau of Human Resources for the Board, of Jones' disciplinary demands in separate telephone calls. He related to them that any discipline imposed on the African-American individuals might violate the settlement agreement those individuals had reached with the Board in the race discrimination suit. Robinson and Scicchitano each informed Zappan that they were unaware of the settlement agreement to which he referred. Both men also indicated that Zappan should seek Jones' advice regarding any disciplinary action. Zappan testified that Scicchitano further reminded him he was not mandated to comply with any of Jones' demands and he should put any objection he had to the discipline at issue in writing. There is nothing in the record to indicate that Zappan ever objected in writing to Jones' allegedly unlawful demands.

Zappan testified that he refused to follow Jones' disciplinary demands. He conceded, however, that Watkins and Self deserved to be disciplined and, in fact,

4

recommended that each of them be disciplined[1] but not terminated. The Board disciplined both Watkins and Self in 1998 almost exactly as Zappan had recommended.[2] At no time did the Board discipline either Young or Rankin. The record also establishes that, prior to the issuance of Jones' alleged demands, Zappan disciplined, counseled or criticized the performance of the very same employees he now contends Jones insisted he discriminate against in retaliation for their participating in the race discrimination suit.

In March 1998, Jones prepared Zappan's Employee Performance Review (EPR) for the period covering March 1997 to March 1998. Jones rated Zappan's overall performance as "needs improvement." Jones testified that he rated Zappan this way due to his failure to manage his division to ensure Pardon Board investigations were completed on time and parole re-entry cases were opened promptly. Specifically, on June 4, 1997, Jones assigned six Pardon Board investigations to each of the three deputy directors in the Philadelphia District, one of whom was Zappan. Jones requested the deputy directors complete those investigations no later than July 10, 1997. Zappan concedes his division failed to meet the initial deadline and several extended deadlines and blamed that failure on under-staffing, inadequate training, and a lack of cooperation from the correctional institutions. Zappan contested the rating he received in his March

---

[1] Zappan recommended that Watkins and Self receive a verbal reprimand and a two-day suspension, respectively.

[2] The Board issued Watkins a verbal reprimand and Self a three-day suspension. The Board terminated Watkins on August 3, 2001 for unrelated conduct. Self resigned on March 18, 1999.

EPR and met with Jones on at least two occasions to discuss the problem. According to Zappan, the March EPR blocked promotional opportunities for him. Zappan, however, failed to allege specifically any examples of missed opportunities.

On March 12, 1998, Zappan arrived forty-five minutes late to work. Four days later, Jones held a pre-disciplinary conference with Zappan to discuss his tardy arrival. During the conference, Zappan admitted arriving late to work and explained that it was a result of a traffic accident on Interstate 95. Jones wrote a memorandum to his supervisor summarizing the conference and recommending Zappan receive a written reprimand. After reviewing Jones' memorandum, the Board issued Zappan a written reprimand and charged him with leave for the forty-five minutes of work he missed on March 12. Zappan claims the written reprimand blocked promotional opportunities for him, but again failed to provide any examples of such missed opportunities.[3]

On March 26, 1998, Jones asked Zappan for a detailed report due March 30 concerning the chronic failure of Zappan's division to open parole re-entry cases. Zappan's report, which was submitted on April 1, stated that the cases in his unit were not opened in a timely manner because his division was improperly staffed and not properly trained. On April 28, Jones wrote a memorandum to his supervisor recommending Zappan be suspended for his infractions. In response, the Board

---

[3] Zappan also claims that he and Young were required to work overtime hours without pay in March.

suspended Zappan for five days without pay.

Zappan appealed his March EPR, April 15 written reprimand, and five-day suspension to the Commission in two separate appeals. The Commission conducted a hearing during which Zappan was able to present testimony and evidence in support of his first appeal. In July, the Commission found that the Board had violated Section 905.1 of the Civil Service Act and ordered the Board to expunge Zappan's March EPR from his personnel file as well as reimburse Zappan for the forty-five minutes of lost wages. The Board appealed the Commission's decision to the Commonwealth Court of Pennsylvania, which reversed the Commission's order concerning the March EPR but affirmed the Commission's order regarding the forty-five minutes of wages.

The Commission conducted another hearing to resolve Zappan's second appeal challenging his five-day suspension. At the conclusion of that hearing, the Commission ruled that the Board failed to prove good cause for suspension. The Board again appealed the Commission's order to the Commonwealth Court of Pennsylvania, and it affirmed. On July 21, 2001, the Board reimbursed Zappan for the wages he lost during his five-day suspension.

In July 2000, Zappan filed a complaint in federal District Court against the Board, William Ward, Chairman of the Board, Robinson, Scicchitano, Thomas, and Jones. The complaint asserted the following seven claims: (1) racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964; (2) age discrimination in violation

of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*; (3)

violations of procedural due process actionable through 42 U.S.C. § 1983; (4) violations

of substantive due process actionable through 42 U.S.C. § 1983; (5) selective treatment

equal protection violations actionable through 42 U.S.C. § 1983; (6) retaliation in

violation of the First Amendment actionable through 42 U.S.C. § 1983; and (7)

retaliation in violation of the Pennsylvania Human Rights Act (PHRA).

By agreement of the parties, the District Court dismissed all of Zappan's claims

against the individual defendants in their official capacities and all the claims against the

Board except for Title VII and ADEA claims. The defendants, save Thomas,[4] moved for

summary judgment on Zappan's remaining claims. The District Court granted the

defendants' summary judgment motion in its entirety and Zappan filed a motion for

reconsideration of that order. He then filed a motion for leave to supplement his motion

for reconsideration. The Court denied both of these motions. This appeal followed.

## II. Jurisdiction

The District Court had subject matter jurisdiction under 28 U.S.C. § 1331 and 28

U.S.C. § 1343, and supplemental jurisdiction under 28 U.S.C. § 1367. We have

appellate jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

---

[4]There was no summary judgment motion filed on behalf of Thomas because
counsel for the defendants withdrew from representing her with the Court's permission
earlier in the proceedings.

## III. Standard of Review

We review grants of summary judgment *de novo*, applying the same standard that the District Court applied. *Union Pac. R.R. v. Greentree Transp. Trucking Co.*, 293 F.3d 120, 125 (3d Cir. 2002). Pursuant to Fed. R. Civ. Pro. 56(c), summary judgment should be granted only where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When considering a motion for summary judgment, a court must view all evidence in favor of the non-moving party. *Bixler v. Cent. Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1297 (3d Cir. 1993). Accordingly, all doubts must be resolved in favor of the non-moving party. *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 (3d Cir. 1983). To challenge successfully a motion for summary judgment, the non-moving party must be able to produce evidence that "could be the basis for a jury finding in that party's favor." *Kline v. First W. Gov't Sec.*, 24 F.3d 480, 485 (3d Cir. 1994).

## IV. Analysis

### A. Contested Material Facts

Zappan contends that, in dismissing his claims on summary judgment, the District Court improperly relied on contested issues of material fact and ignored certain evidence raising inferences in his favor. A review of the evidence on which Zappan bases this

9

claim, however, makes clear that his characterization of the facts is not supported in the record.

Zappan identifies four specific factual findings he maintains the District Court either erroneously found as uncontested or impermissibly ignored. First, he maintains that the Court ignored testimony of Daniel Solla, Deputy Director of the Board's Philadelphia District, which illustrates that Solla was also the victim of retaliation when he was denied clerical support and charged with three counts of insubordination. Solla's deposition testimony does not support these allegations. Indeed, he testified that (1) Jones never asked him to discipline improperly any of his agents and (2) Jones provided him with overall ratings of outstanding and commendable.

Next, Zappan contends the District Court improperly disregarded the testimony of Young indicating that Jones intended to discriminate and retaliate against African-Americans who had been party to the racial discrimination suit against the Board. Zappan claims that Young testified that he knew and/or believed that Jones sought to fire those employees. A review of Young's testimony, however, reveals that (1) he believed that Jones sought to discipline Self because he was not doing his job and (2) he had only heard of Jones' alleged discriminatory and retaliatory intentions through general gossip channels, which he makes a practice of ignoring.

Zappan further submits that the District Court improperly disregarded evidence that the African-American individuals he was pressured to discipline were subsequently

10

fired and/or constructively discharged from their employment with the Board after they were disciplined. This allegation is also unsupported by the record. Indeed, the following facts are undisputed and undermine Zappan's characterization of the evidence before the District Court: Zappan conceded that Watkins and Self deserved to be disciplined for their respective employment deficiencies; Zappan recommended that Watkins receive an oral reprimand and Self receive a two-day suspension; the Board issued Watkins an oral reprimand and Self a three-day suspension; the Board fired Watkins on August 3, 2001, more than three years after Jones' alleged unlawful demands, for unrelated conduct; Self resigned more than one year later on March 18, 1999; the Board never disciplined Young or Rankin; Young retired on August 13, 1999; and Rankin retired on January 2, 1999. It is also uncontested that, prior to Jones' alleged demands and in some instances prior to Jones' appointment as Deputy District Director, Zappan disciplined or counseled the very same employees he now contends Jones demanded that he terminate.

Finally, Zappan argues that the District Court improperly accepted as true the allegedly contradicted fact that Jones was unaware of the settlement agreement arising from the race discrimination lawsuit brought by the African-American employees against the Board and Zappan. Zappan's claim that Jones knew of the settlement agreement is not supported by the record. Jones testified that he was not aware of the settlement agreement during the time Zappan alleges he made the discriminatory disciplinary

11

demands. Relying on his own deposition testimony, Zappan maintains that Jones made it clear to him in a conversation between the two of them that he was aware of the settlement agreement. Zappan is certainly entitled to rely on his own deposition testimony, but that testimony does not support his allegation. Instead, it reveals that Zappan mentioned the settlement agreement to Jones because he believed that Jones was alluding to individuals involved in that dispute.

For the reasons provided above, we cannot conclude that the District Court improperly relied on contested issues of material fact and ignored certain evidence raising inferences in Zappan's favor.

### B. Retaliation Claims

Zappan further contends the District Court erroneously found that he produced insufficient evidence to establish a *prima facie* case of retaliation under Title VII, the PHRA, or Section 1983. Because the same facts and circumstances underlying a Title VII retaliation claim are relevant to the resolution of Zappan's PHRA and Section 1983 claims, these issues will be addressed simultaneously. *See Azzaro v. County of Allegheny*, 110 F.3d 968, 981 (3d Cir. 1997) (*en banc*) (same facts and considerations relevant in evaluating causation under Title VII and Section 1983); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997) (elements of PHRA retaliation claim and Title VII retaliation claim are the same).

To establish a *prima facie* case of retaliation under either Title VII or the PHRA, a

plaintiff must show that "(1) he or she engaged in a protected employee activity, (2) the employer took an adverse employment action after or contemporaneous with the protected activity, and (3) a causal link exists between the protected activity and the adverse action." *Weston v. Pennsylvania*, 251 F.3d 420, 430 (3d Cir. 2001). Similarly, to prevail on a First Amendment Section 1983 retaliation claim, a plaintiff must establish that (1) he engaged in protected speech, (2) his interest in the protected speech outweighs the employer's countervailing interest in promoting the efficiency of the public service it provides to its employees, and (3) the protected activity was a substantial or motivating factor in the alleged retaliatory action. *Baldassare v. New Jersey*, 250 F.3d 188, 194-95 (3d Cir. 2001). Moreover, an employer can rebut the claim by demonstrating it would have reached the same decision even in the absence of the protected conduct. *Id*. at 195. The District Court held that Zappan failed to satisfy the above-enumerated elements and, as a result, dismissed his retaliation claims with prejudice.

The crux of Zappan's lawsuit is that he engaged in protected activity when he complained about Jones' allegedly discriminatory and retaliatory demands that he discipline certain African-American employees who were parties to the settlement agreement with the Board. Employees engage in protected activity under Title VII and the PHRA when they (1) oppose an unlawful employment practice, (2) file a charge of discrimination, or (3) participate in a charge brought by another. 42 U.S.C. § 2003-3a; 43 P.S. § 955(d); *see also Abramson v. William Patterson Coll.*, 260 F.3d 265, 288 (3d

13

Cir. 2001) (stating that complaints – whether oral or written, formal or informal – about unlawful employment practice satisfy the first prong of the *prima facie* case under Title VII). Similarly, a plaintiff's activity is protected under the First Amendment whenever he engages in speech involving a "matter of public concern." *Baldassare*, 250 F.3d at 195.

The Supreme Court has made clear, however, that simply opposing an employment practice does not rise to the level of a protected activity if no reasonable person could believe that the actions complained of were unlawful. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (*per curiam*) (holding no *prima facie* Title VII case established where no reasonable person could have believed she was complaining of protected activity); *see also Barber v. CSX Dist. Serv.*, 68 F.3d 694, 702 (3d Cir. 1995) (stating that for discrimination complaint to rise to matter of public concern, it must sufficiently contain allegations of illegal discrimination). In *Breeden*, the plaintiff was reviewing psychological evaluation reports of several job applicants with a male supervisor and a male co-worker. 532 U.S. at 269. One of the applicant's reports disclosed the fact that he had once said to a female co-worker: "I hear making love to you is like making love to the Grand Canyon." *Id*. The supervisor read this comment out loud, looked at the plaintiff, and said: "I don't know what that means." *Id*. The male co-worker replied: "I'll tell you later," and both men chuckled. *Id*. The plaintiff later complained about this interaction to another supervisor. *Id*. at 269-70

14

When the plaintiff was subsequently terminated, she brought a Title VII retaliation claim. *Id*. at 270.

The Supreme Court affirmed granting the defendant's motion for summary judgment because "[n]o reasonable person could have believed that the single incident recounted" amounted to a Title VII hostile work environment claim. *Id*. at 271. The Court reasoned that it was a necessary part of the plaintiff's job to read and review sexually explicit statements such as those contained in the psychological reports, and the "isolated inciden[t]" at issue did not amount to such an abusive environment that it was actionable. *Id*. Accordingly, the Court concluded that the plaintiff was not terminated for activity protected under Title VII. *Id*.

Here, the conduct Zappan complained about was Jones' instruction that Zappan discipline subordinates who were not doing their job. The record supports the District Court's rationale for ruling that "[a] reasonable fact finder could not conclude that there was discrimination when Jones was seeking discipline for [the three African-American] employees [named in Zappan's complaint]." App. vol. I, at 21a. The District Court explained that

> [t]he request made by Mr. Jones was a general demand that no reasonable person could believe was based on race. He wanted people who were not doing their jobs to be terminated regardless of their race. Mr. Jones made no reference to either the race of the individuals who needed to be disciplined or even to specific individuals who were all of one race. It was the plaintiff who concluded that Mr. Jones's demands were racially motivated. The plaintiff decided that Mr. Jones was referring to three African American employees who the plaintiff believed had a settlement

15

agreement with the Board.

Even if Mr. Jones intended Mr. Zappan to discipline the three individuals that Mr. Zappan thought were the subject of the discipline demands, no reasonable fact finder could conclude that Mr. Jones was discriminating against the individuals. Mr. Zappan acknowledges that Mr. Watkins and Mr. Self were in need of discipline[,] going so far as to tell Mr. Jones that both employees were guilty of insubordination. Mr. Zappan also recommended discipline for both employees that only differed marginally from what each employee received. A reasonable fact finder could not conclude that there was discrimination when Mr. Jones was seeking discipline for employees guilty of insubordination.

With respect to the individuals mentioned by name in the conversation between Mr. Jones and Mr. Zappan – Mr. Rankin and Mr. Young – there is no evidence allowing a reasonable person to find that Mr. Jones acted discriminatorily towards either employee. Mr. Zappan stated that Mr. Rankin was mentioned because he was already scheduled for a pre-disciplinary conference. As to Mr. Young, Mr. Jones did talk about Mr. Young's performance with Mr. Zappan, but he never requested Mr. Zappan to discipline Mr. Young. Neither discussing discipline for an individual scheduled for a pre-disciplinary conference nor discussing the performance of a subordinate would allow a reasonable person to conclude that Mr. Jones was acting discriminatorily without more.

*Id*. at 21a-22a.

With regard to Zappan's expressions of concern in his conversations with Robinson, Scicchitano, and Thomas, the District Court noted that Zappan's "concern is almost more that the settlement agreement was being breached than there was discrimination." *Id*. at 23a. In other words, what Zappan specifically communicated to Jones' supervisors was his belief that Jones was disciplining certain subordinates without the safeguards provided for in the settlement rather than acting out of racial or retaliatory animus or for a racist purpose. We agree.

In sum, the District Court's factual findings are well supported. While the record

16

makes clear that Zappan and Jones were not fond of one another and had a history of contentious clashes, it reveals no evidence to support Zappan's allegations of retaliation or racial discrimination. For the reasons provided above, the District Court's ruling that no reasonable person could find that Zappan's opposition to the defendants' conduct was protected activity is affirmed. Because this determination is dispositive, we need not address Zappan's challenge to the District Court's determination that it failed to establish any causal connection between his alleged protected activity and adverse employment actions.

### C. Equal Protection

Zappan next contends the District Court erred in dismissing his equal protection claim. To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, a plaintiff must prove the existence of purposeful discrimination. *Batson v. Kentucky*, 476 U.S. 79, 93 (1986). Specifically, Zappan must demonstrate that he "receiv[ed] different treatment from that received by other individuals similarly situated," *Kuhar v. Greensburg-Salem School Dist.*, 616 F.2d 676, 677 n.1 (3d Cir. 1980), and the different treatment was improperly motivated by discrimination or punishment for exercising a constitutional right. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990).

In support of his argument, Zappan alleges that (1) unlike other directors, he was denied clerical support and was disciplined for tardiness, and (2) the Board deviated from

its progressive disciplinary policy when it issued his five-day suspension. While there is no record evidence confirming these claims, there is record evidence that tends to discredit them. Indeed, Zappan expressly controverts his first allegation – that he alone was denied clerical support – in his brief to our Court by stating that Solla, a similarly situated white Board supervisor, was denied clerical support. *See* Pet'r. Br. at 30 (stating "[t]he deposition of Solla showed that he too had been the victim of retaliation from defendant Jones in the form of a denial of clerical support"). Moreover, Zappan relies on the testimony of Robinson to bolster his second allegation – that his suspension constituted a deviation from the Board's progressive disciplinary policy – but Robinson testified that Zappan's five-day suspension fell within the standard suspension range for a management employee. App. vol. II, at 258a. Because the record evidence does not support and, in fact, tends to refute Zappan's contention that he was treated differently than similarly situated Board supervisors, we are compelled to affirm the District Court's dismissal of his equal protection claim.

### D. *Procedural Due Process*

Zappan maintains that the District Court erred in dismissing his procedural due process claim. Specifically, Zappan alleges he did not receive sufficient due process concerning his written reprimand and five-day suspension. The essential requirements of any procedural due process claim are notice and the opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). As with Zappan's other claims,

18

the record supports the District Court's conclusion that "[e]ach time Zappan was disciplined . . . he received adequate process." App. vol. I, at 31a. Accordingly, the District Court's dismissal of Zappan's due process claim is affirmed.

### E. Claims Against Thomas

Zappan also argues that the District Court erred in refusing to allow his claims against Thomas to proceed to trial. This contention is unpersuasive. Zappan brought the same claims against Thomas as he brought against the other defendants. Because the analysis justifying the dismissal of the Zappan's claims applies to Thomas with the same force as to the other defendants, the District Court's denial of Zappan's request to proceed to trial against Thomas is affirmed.

*\* \* \* \* \**

As explained above and for substantially the same reasons set forth in the District Court's opinion, we affirm the dismissal of Zappan's claims.