# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

ELIZABETH WAGENHOFFER )
and JOHN WAGENHOFFER )
     Plaintiffs, )
      )
      )
     v. )     C.A. No.: N14C-10-203 VLM
      )
VISIONQUEST NATIONAL )
LTD and DON DEVORE )
      )
     Defendants. )

Submitted: July 14, 2016
Decided: July 14, 2016
Order Issued: July 18, 2106

## ORDER

*Upon Defendants' VisionQuest National LTD and Don DeVore, Motion for Summary Judgment,*
**DENIED.**

This 18th day of July, 2016, having considered Defendants' VisionQuest National LTD ("VisionQuest") and Don DeVore ("DeVore") (collectively "Defendants") Motion for Summary Judgment (D.I. 105); the Plaintiffs' Answering Brief thereto (D.I. 108); Defendants' Reply Brief thereto (D. I. 110); the parties' arguments at the hearing of this motion on this date; and the record in this matter, it appears to the Court that:

(1)    VisionQuest is a private company that provides services to adjudicated and at-risk youth in over twenty states, including Delaware through its

contract with the Division of Youth Rehabilitative Services of Delaware's Department of Services for Children, Youth and their Families.[1]

(2)     Wagenhoffer was an at-will employee at VisionQuest from 1998 until her termination on April 22, 2013.[2]   At the time of her termination she held the position of Chief Administrator for Delaware programming.[3]   For the majority of her employment with VisionQuest, Wagenhoffer was well-respected and received positive employment reviews as late as 2009.[4]

(3)     In April 2012, VisionQuest and the State of Delaware negotiated and entered into a contract that significantly expanded VisionQuest services.[5]   The contract allegedly also expanded Wagenhoffer's employment responsibilities.[6]

(4)     About three months later, VisionQuest hired DeVore to assist in implementing these expanded services.[7]   There seems to be some dispute about whether DeVore was Wagenhoffer's supervisor or superior.  VisionQuest asserts that it hired DeVore: (a) to oversee and implement the expanded contract duties;

---

[1]     Defs.' Br. in Support of Summ. J. ("Defs.' Br."), at 4.

[2]     Compl. ¶¶ 9-10, 78.

[3]     Plfs.' App. at A044 (hierarchy chart of VisionQuest Delaware State Programs staff).

[4]     She received no further reviews of any kind after 2009.  Compl. at ¶ 14.

[5]     Defs.' Br. at 4.

[6]     *Id*. at 5-6.

[7]     Compl. ¶ 15; Defs.' Br. at 7.

and (b) because it did not believe that Wagenhoffer was able to handle her increased responsibilities without help.[8] Wagenhoffer alleges that she believed that DeVore was hired to assist her and that she was not told he would be her supervisor.[9]

(5) From the record, it is clear that the relationship between Wagenhoffer and DeVore was contentious. Wagenhoffer cites a number of incidents where DeVore was unprofessional, condescending, or aggressive. She alleges that DeVore called female employees "sweetie" or "hon" and repeatedly treated male staff better than female staff.[10]

(6) For its part, VisionQuest offers numerous problems with Wagenhoffer's performance. While the record is unclear as to exactly which problems resulted in her termination, two particular events are relevant.

(7) First, in late March of 2013, DeVore and Wagenhoffer argued over staffing problems at a detention center.[11] Wagenhoffer alleges that DeVore "verbally attacked" her about her poor performance and incompetence.[12]

---

[8] Defs.' Br. at 6-7.

[9] Compl. ¶¶ 20-21; Plfs.' Ans. Br. in Opp'n to Summ. J. ("Plfs.' Opp'n) at 5-6.

[10] Compl. ¶¶ 24-25, 33. *See also* Plfs.' Opp'n at 8-10.

[11] Compl. ¶¶ 59-64.

[12] *Id*. at ¶¶ 63-64.

Following this incident, on March 24, 2013, Wagenhoffer wrote DeVore an email detailing her conflicts with him.[13] DeVore responded that they would discuss the contents of the email in a meeting scheduled for March 26, 2013. He copied Beth Rosica, the Vice President of Business Development and Wagenhoffer's supervisor.[14] At the meeting, Wagenhoffer expressed her concerns to DeVore and Rosica regarding DeVore's "abusive treatment of [her] and other female staff members."[15] Wagenhoffer, via email, accused DeVore of creating a hostile work environment, but denied this when questioned further.[16] At her deposition, Wagenhoffer clarified that her denial stemmed from her fear of the effect the accusation would have on her job.[17]

(8) The second incident began on April 11, 2013, when Courtney Gum, a recent VisionQuest hire, accused DeVore of sexual harassment.[18] Upon learning about the incident the next day, Wagenhoffer informed Marlene Devonshire, another VisionQuest employee in the Delaware office.[19] Wagenhoffer testified

---

[13]    Compl. ¶¶ 65-66. *See* Ex. 20 to Defs.' Br. (copy of email).

[14]    *Id*. at ¶ 67.

[15]    *Id*. at ¶ 68.

[16]    *Id*. at ¶¶ 69-74; Defs.' Br. 12-13.

[17]    Wagenhoffer Dep. 176-177.

[18]    Plfs.' Opp'n at 16-19.

[19]    *Id*. at 17-18; Defs.' Br. at 13-14.

that she believed Devonshire was responsible for Human Resources in the Delaware office.[20] However, VisionQuest says that Wagenhoffer mishandled the reporting of this incident.[21] The VisionQuest Employee Handbook requires all allegations of sexual misconduct be reported to the Human Resources Department or the Director of Compliance.[22] VisionQuest admits that Wagenhoffer did report the incident to Devonshire, but says that Devonshire was subordinate to Wagenhoffer, and thus, not the correct Human Resources contact to be notified.[23]

(9) On April 22, 2013 – approximately one year after VisionQuest expanded its services to the State, approximately nine months after DeVore was hired, and about one month after she complained of a hostile work environment – VisionQuest terminated Wagenhoffer.[24]

(10) As required under Delaware's Discrimination in Employment Act ("DDEA"),[25] Wagenhoffer first filed her discrimination charge with the Delaware

---

[20] Wagenhoffer Dep. at 102 (describing Devonshire as the office's Human Resources department).

[21] Defs.' Br. at 13-14.

[22] *Id*.

[23] *Id*.

[24] Compl. ¶ 78.

[25] DEL. CODE ANN. tit. 19, § 712 (2013).

Department of Labor.[26] She received her right to sue letter,[27] and in October 2014, she initiated the present action, alleging DDEA violations for racial and sexual discrimination (Count I) and retaliation (Count II) against both VisionQuest and DeVore. She alleges a claim for tortious interference with her business and contractual relationships against DeVore individually (Count III). By stipulation, Wagonhoffer withdrew her claim for discrimination based upon race in Count I.[28] Her husband, John Wagenhoffer, brings a claim for loss of consortium alleging martial strain caused by his wife's employment problems (Count IV).[29]

(11) VisionQuest and DeVore now move for summary judgment on Counts I through III under Superior Court Civil Rule 56.

(12) Delaware Superior Court Rule 56 permits granting summary judgment upon a showing "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[30] In considering the motion, "[a]ll facts and reasonable inferences must be considered in a light most

---

[26] Compl. ¶¶ 5, 6.

[27] *Id*.

[28] Joint Stipulation and Order, *Wagenhoffer et al. v. VisionQuest Nat'l Ltd. et al.*, C.A. No. N14C-10-203 VLM (Jan. 23, 2015) (D.I. 16).

[29] Compl. ¶¶ 83-98.

[30] Super. Ct. Civ. R. 56(c); *Ebersole v. Lowengrub*, 180 A.2d 467, 468-69 (Del. 1962) (Summary judgment will not be granted if there is a material fact in dispute or if "it seems desirable to inquire thoroughly into [the facts] to clarify the application of the law to the circumstances.").

favorable to the non-moving party."[31]   The moving party bears the burden of establishing the non-existence of any material issue of fact.[32]

(13)   Only when the moving party sustains the initial burden of showing the nonexistence of any material issues of fact, does the burden shift to the non-moving party to substantiate its adverse claim by showing that there are material issues of fact in dispute.[33]

(14)   At that point, it is not enough for the opposing party merely to assert the existence of such a disputed issue of fact. The opponent to a motion for summary judgment "must do more than simply show that there is some metaphysical doubt as to material facts."[34] But only "[i]f the facts permit reasonable persons to draw from them but one inference, [is] the question [] ripe for summary judgment."[35]

---

[31]      *Nutt v. A.C. & S. Co., Inc.*, 517 A.2d 690, 692 (Del. Super. Ct. 1986).

[32]      *See, e.g., Shonts v. McDowell*, 2003 WL 22853659, at *1 (Del. Super. Ct. Aug. 5, 2003) (discussing standard for summary judgment).

[33]      *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1970).

[34]      *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*, 475 U.S. 574, 586 (1986)).

[35]      *Id*. (citing *Wootten v. Kiger*, 226 A.2d 238 (Del. 1967)).

(15)  "In an employment discrimination case, the burden of persuasion on summary judgment remains unalterably with the employer as movant."[36] VisionQuest must demonstrate that "even if all of the inferences which could reasonably be drawn from the evidentiary materials of record were viewed in the light most favorable to the plaintiff, no reasonable jury" could find for Wagenhoffer.[37]  And in an employment discrimination case, "summary judgment is to be used *sparingly*, especially where the court is viewing the case at first glance."[38]

(16)  Wagenhoffer first alleges gender discrimination and retaliation, in violation of Delaware's Discrimination in Employment Act ("DDEA").[39]  It is not entirely clear whether Wagenhoffer alleges a violation of the DDEA because of gender-based discrimination resulting in termination, damages due to a hostile work environment, or both.  The Complaint merely labels her claim as one for "discrimination," with many of the allegations using the term "hostile work environment."  As the United States Supreme Court has made clear:  "Hostile work

---

[36]  *Ennis v. Del. Transit. Corp.*, 2015 WL 1542151, at *3 (Del. Super. Ct. Mar. 9, 2015) (citing *Doe v. C.A.R.S. Protection Plus, Inc.,* 527 F.3d 358, 369 (3rd Cir. 2008), *order clarified,* 543 F.3d 178 (3d Cir. 2008)).

[37]  *Doe*, 527 F. 3d at 362; *Ennis*, 2015 WL 1542151, at *3.

[38]  *Ennis*, 2015 WL 1542151, at *3 (emphasis in original).

[39]  DEL. CODE ANN. tit. 19, § 710, *et seq.*

-8-

environment claims are different in kind from discrete acts" of discrimination.[40] A claim for hostile work environment requires a distinct *prima facie* showing.[41] Wagenhoffer did not specifically address this *prima facie* in her Opposition Brief. Accordingly, the Court will defer to trial whether Wagenhoffer can prove all the elements necessary to establish a claim for hostile work environment, and whether she is therefore due an instruction and potential verdict on that separate claim.

(17)    In analyzing Wagenhoffer's DDEA claims, case law interpreting its federal counterpart, 42 U.S.C. § 2000(e) of the federal Civil Rights Act of 1964 ("Title VII") is instructive.[42]    The DDEA's language "is substantially the same

---

[40]    *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 103 (2002) (addressing claims under federal discrimination law).

[41]    *See Spicer v. CADapult, Ltd.*, 2013 WL 6917142, at *6 (Del. Super. Ct. Nov. 15, 2013), *aff'd,* 89 A.3d 478 (Del. 2014) (internal footnotes omitted).

> When a plaintiff brings a hostile work environment claim on the basis of sexually objectionable behavior, the plaintiff must establish the convergence of five elements: (1) the plaintiff suffered intentional discrimination because of her sex; (2) the discrimination must be "pervasive and regular"; (3) the discrimination must detrimentally affect the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex; and (5) *respondeat superior* liability makes the defendant-employer liable for the actions of the person who harassed the plaintiff.

[42]    *Giles v. Family Ct. of Delaware*, 411 A.2d 599, 601-602 (Del. 1980) (in addressing case concerning racial discrimination, the court held that the Delaware statute on employment discrimination, 19 *Del. C.* § 711(a), was substantially similar to Title VII, 42 U.S.C § 2000e-2(a)(1), and, therefore, the federally developed tests were applicable under a state action); *Riner v. Nat.'l Cash Register*, 434 A.2d 375, 376 (Del. 1981) ("Delaware Courts take the 'interpretive lead' from District Court and Third Circuit Court of Appeals decisions regarding interpretations of Title VII.").

as"[43] Title VII's; and Delaware courts have repeatedly held that case law interpreting Title VII is relevant to any state law discrimination claim.[44] To the extent that Wagenhoffer seeks any departure from this standard, that argument is denied.[45]

**Count I**
**_Employment Discrimination Based on Gender_**

(18) To prove her employment discrimination case, Wagonhoffer may offer either "direct evidence of intent to discriminate" or "indirect evidence from which the Court can draw an inference of the employer's intent to discriminate."[46] There is no direct evidence of discrimination in this case. Accordingly, the common three-step analysis set forth in _McDonnell Douglas Corp. v. Green_ and progeny applies.[47]

---

[43] _Giles_, 411 A.2d at 601-602.

[44] _See_, _e.g._, _id._ (adopting _McDonnell Douglas_ framework, discussed below, in Delaware); _Riner_, 434 A.2d at 376; _Paitsel v. State_, 2016 WL 1424828, at *5 (Del. Super. Ct. Apr. 7, 2016) ("Delaware takes its interpretive lead regarding our State discrimination statutes from the Federal interpretations due to the similarity of the statutes."); _Ennis v. Del. Transit. Corp._, 2015 WL 1542151, at *5 (Del. Super. Ct. Mar. 9, 2015) (same); _Termonia v. Brandywine Sch. Dist._, 2014 WL 1760317, at *7 (Del. Super. Ct. Apr. 16, 2014) (same); _Spicer_, 2013 WL 6917142, at *3 (same); _Conley v. State_, 2011 WL 113201, at *3 (Del. Super. Ct. Jan. 11, 2011) (same).

[45] _See_ Plfs.' Opp'n at 24-25 (arguing that Delaware's summary judgment law differs from federal law on claims for discrimination and retaliation).

[46] _Ennis_, 2015 WL 1542151, at *5; _Spicer_, 2013 WL 6917142, at *3.

[47] _Conley_, 2011 WL 113201, at *3 ("Court analyzes claims of indirect discrimination under the burden-shifting framework of _McDonnell Douglas/Burdine/Hicks_").

(19) Under the *McDonnell Douglas* framework, Wagenhoffer must first establish a *prima facie* case of discrimination by a preponderance of the evidence.[48] If successful, the burden shifts to VisionQuest to articulate "a legitimate, nondiscriminatory reason for the adverse employment decision."[49] If VisionQuest does, the burden shifts back to Wagenhoffer to show that VisionQuest's "proffered reasons are mere pretexts designed to cover discriminatory motives."[50]

(20) To establish her *prima facie* case, Wagenhoffer must prove, by a preponderance of the evidence, that: (a) she belonged to a protected class, (b) she was qualified for the position, (c) she was terminated, and (d) the circumstances surrounding the termination give rise to an inference of illegal discriminatory motive.[51] The *prima facie* requirement is not meant to be "onerous" – Wagenhoffer need only present "sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based on a trait that is protected" by the DDEA.[52]

---

[48] *Riner*, 434 A.2d at 376-77.

[49] *Id.*

[50] *Id.* at 377.

[51] *See Conley*, 2011 WL 113201, at \*3-\*4 (quoting *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312-13 (1996)).

[52] *Ennis v. Del. Transit. Corp.*, 2015 WL 1542151, at \*5 (Del. Super. Ct. Mar. 9, 2015).

(21)  Wagenhoffer easily establishes elements one and three of her claim: she is a member of a protected class – a female – and VisionQuest terminated her employment.

(22)  There is some dispute whether Wagenhoffer was qualified for her additional responsibilities under VisionQuest's new contract.  But VisionQuest must have believed, at least to some extent, that Wagenhoffer was qualified because it did not terminate her when the administrative structure and her responsibilities changed.  In fact, she remained in her "new" position for almost one year after the changes took effect.  Thus, for purposes of this motion, Wagenhoffer has satisfied the Court that she was qualified for her position.

(23)  The parties contest the fourth factor – specifically, whether the circumstances surrounding Wagenhoffer's termination give rise to an inference of illegal discriminatory motive.  Wagenhoffer cites several incidents in which she and DeVore "butted-heads."  Many of these disagreements reflect nondiscriminatory actions that are unrelated to Wagenhoffer's gender; for example, Wagenhoffer complains that DeVore revealed his own salary,[53] refused to take suggestions,[54] told other employees that Wagenhoffer had "messed up,"[55]

---

[53]    Compl. ¶ 29.

[54]    *Id*. at ¶ 44.

[55]    *Id*. at ¶ 46.

and harshly criticized her performance, sometimes in front of other staff members.[56]

(24)   But Wagenhoffer's proffered evidence of DeVore's gender-specific comments and actions include: (a) that DeVore told other female employees that they were not qualified or incompetent, but reassured male employees that these comments only applied to female staff;[57] (b) that female employees complained about DeVore's overly friendly and improper advances;[58] (c) that DeVore referred to Wagenhoffer as "sweetie" or "hon";[59] and (d) that DeVore yelled expletives at Wagenhoffer.[60]

(25)   Of these examples, the first – that DeVore may have treated male employees differently than female employees – presents the most genuine factual dispute.   Discrimination law is not "a general civility code for the American workplace."[61]   Instead, the focus is "whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other

---

[56]   *Id*. at ¶ 63.

[57]   *Id*. at ¶¶ 22-24, 30; *see also* Wagenhoffer Dep. 96-97, 110.

[58]   Compl. ¶ 26.

[59]   *Id*. at ¶¶ 28, 33.

[60]   *Id*. at ¶ 49.

[61]   *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80 (1998) (under Title VII).

sex are not exposed."[62]  "In other words, the conduct of jerks, bullies, and persecutors is simply not actionable under [discrimination law] unless they are acting because of the victim's gender."[63]

(26) The vast majority of DeVore's alleged misconduct centers on "bullying" behavior that was unconnected to Wagenhoffer's gender; it appears he could be difficult for all to work with.  But the Court is aware that it *must* interpret the evidence in the light most favorable to Wagenhoffer – the nonmoving party – and notes the low burden placed on a plaintiff's *prima facie* discrimination case.[64] And so, while somewhat skeptical, the Court finds that Wagenhoffer has alleged sufficient evidence that DeVore treated some female employees worse than other

---

[62]  *Smith v. Perdue Farms Inc.*, 2014 WL 1409950, at *5 (D. Del. Apr. 11, 2014) (determining whether gender discrimination existed for purposes of a sexual harassment claim and quoting *Oncale*, 523 U.S. at 80), *report and recommendation adopted*, 2014 WL 4954472 (D. Del. Sept. 30, 2014)).  *See also Calloway v. E.I. DuPont de Nemours & Co.*, 2000 WL 1251909, at *5 (D. Del. Aug. 8, 2000) (same), *aff'd sub nom. Calloway v. E.I. Dupont De Nemours & Co.*, 29 F. App'x 100 (3d Cir. 2002); *cf. Brown-Baumbach v. B&B Auto., Inc.*, 437 F. App'x 129, 135 (3d Cir. 2011) (dismissing plaintiff's gender discrimination claim where she failed to present any evidence that similarly situated males were treated more favorably).  *See also Ennis v. Del. Transit. Corp.*, 2015 WL 1542151, at *6 (Del. Super. Ct. Mar. 9, 2015) (to establish fourth element of his *prima facie* case for racial discrimination "plaintiff must demonstrate that he was treated less favorably then [*sic*] others because he was white.").

[63]  *Perdue Farms*, 2014 WL 1409950, at *5 (quoting *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 467 (6th Cir. 2012)).

[64]  *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006) ("there is a low bar for establishing a *prima facie* case of employment discrimination [under Title VII]."); *Ennis*, 2015 WL 1542151, at *5 (noting that the *prima facie* requirement for an employment discrimination claim is a "burden easily met.") (quoting *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 365 (3rd Cir. 2008)).

male employees. This behavior is corroborated with deposition testimony from Lindsay Lind,[65] Courtney Gum,[66] and Lamar Roane.[67]

(27) In addition, while Wagenhoffer makes no allegations of discriminatory animus against Rosica who was actually responsible for her termination, the case could be made that DeVore influenced Rosica's decision to terminate. There is recorded evidence of a close working relationship between Rosica and DeVore. Wagenhoffer was reprimanded almost immediately after making her "hostile work environment" complaint against DeVore to Rosica. DeVore was in attendance when that complaint was discussed. And Wagenhoffer was fired within a month of making it. Where a reasonable jury could find that DeVore's animus played a substantial role in the ultimate decision by Rosica to

---

[65]    Lind Dep. 31 (**Q.** Did [DeVore] treat the male employees the same way he treated the female employees? **A.** No. **Q.** What was the difference? **A.** With the male employees, at least in my opinion, he was very friendly, very, I want to say, I guess, warm. Just definitely he was very encouraging of them and motivating to them. And in no way was he that way towards the females.).

[66]    Gum-Layton Dep. 58-59 (**Q.** Did you ever witness Mr. DeVore doing anything that you would considered [*sic*] inappropriate to any other staff member other than yourself? **A.** Just the way he talked to people . . . he treated female staff different than he treated male staff. **Q.** Why do you say that? **A.** Because he tried to be chummy-chummy and pals with the male staff, and he presented that he . . . was better than the female staff . . .).

[67]    Roane Dep. 37 (describing how DeVore told him that criticism was not aimed at "you guys, it was towards the ladies, or the girls.").

recommend Wagenhoffer's termination, the employer may be liable for discrimination.[68]

(28) Therefore, the circumstances of Wagenhoffer's termination reasonably give rise to an inference of discrimination on the basis of her gender. Accordingly, Wagenhoffer has met the minimal burden of establishing her *prima facie* case of gender discrimination.

(29) The burden now shifts to VisionQuest to show a legitimate reason for Wagenhoffer's termination.[69] VisionQuest states that Wagenhoffer was terminated "because she failed to properly handle a complaint of improper conduct lodged against DeVore and her prior history of failing to administer the new contract."[70] If true, this is a legitimate reason for Wagenhoffer's termination.

(30) The existence of legitimate reasons to terminate Wagenhoffer's employment shifts the burden back to Wagenhoffer to show that these reasons were mere pretext to intentionally discriminate against her because of her gender.[71] To make this showing, Wagenhoffer must demonstrate that a reasonable factfinder

---

[68]    *See Carter v. Midway Slots & Simulcast*, 894 F. Supp. 2d 529, 543 (D. Del. 2012) ("The subordinate bias, or 'cat's paw,' theory states that an employer is liable for race discrimination when a non-biased decision-maker is influenced by a biased managerial employee."), *aff'd sub nom. Carter v. Midway Slots & Simulcast*, 511 F. App'x 125 (3d Cir. 2013) (citing *Staub v. Proctor Hosp.*, 562 U.S. 411 (2011)).

[69]    *Spicer v. CADapult, Ltd.*, 2013 WL 6917142, at *5 (Del. Super. Ct. Nov. 15, 2013).

[70]    Defs.' Br. at 23.

[71]    *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-56 (1981).

could: (a) disbelieve VisionQuest's articulated legitimate reasons; *or* (b) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of VisionQuest's action.[72] If VisionQuest's legitimate reasons are inconsistent or contradictory, a reasonable factfinder could "rationally find them unworthy of credence and hence infer" that VisionQuest did not act for its asserted non-discriminatory reasons.[73]

(31) Multiple issues regarding the alleged legitimate reasons for Wagenhoffer's termination are in dispute such that summary judgment is inappropriate.

(32) First, VisionQuest offers inconsistent reasons for Wagenhoffer's employment termination. Rosica testified in her deposition that Wagenhoffer was terminated because of her inability to work with DeVore and her mishandling of Gum's harassment complaint.[74] However, Jim Yester, the Vice President of Human Resources, testified that Wagenhoffer's mishandling of the sexual

---

[72] *Spicer*, 2013 WL 6917142, at *5 (citing *Equal Emp't Opportunity Comm'n v. BE & K Eng'g Co.*, 536 F.Supp.2d 498, 504-05 (D. Del. 2008)).

[73] *Calloway v. E.I. DuPont de Nemours & Co.*, 2000 WL 1251909, at *7 (D. Del. Aug. 8, 2000) (analyzing discriminatory retaliation claim) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) (analyzing national origin discrimination suit)).

[74] Rosica Dep. 151 (**Q.** What was told to [Wagenhoffer] for the reason for her termination? **A.** There were two reasons told to her for her termination. One was her inability to work with Mr. DeVore. And the second was her failure to handle a sexual harassment allegation correctly.).

harassment incident played no part in the decision to terminate her.[75] This issue is further complicated by VisionQuest's failure to document the events leading up to and reasons for Wagenhoffer's termination.[76]

(33) Second, there is a genuine issue of material fact as to whether Wagenhoffer improperly followed VisionQuest's procedures in addressing Gum's sexual harassment complaint against DeVore.

(34) VisionQuest argues that Wagenhoffer informed subordinate employees of the incident which: (a) jeopardized the investigation; and (b) violated VisionQuest's procedure requiring that sexual harassment claims be reported to either the Human Resources Department of the Director of Compliance.[77]

(35) But Wagenhoffer rebuts this by showing that the policy in effect at that time only required reporting to the HR *Department,* not necessarily the *Director*, noting that the Handbook had specifically changed "Director" to "Department" a few years earlier.[78] Wagenhoffer argues that she fulfilled her responsibilities by informing a human resources employee, Devonshire, even

---

[75] Yester Dep. 79 (**Q.** Did [Wagenhoffer's] role in the Courtney Gum situation play any part of her termination? **A.** No, the decision had been made prior to that.).

[76] *Id*. (**Q.** Are there any written documents memorializing that decision [to terminate Wagenhoffer]? **A.** No, there are not.).

[77] Defs.' Br. at 14-15.

[78] Plfs.' Opp'n at 30.

though Devonshire was her subordinate. Yester admits that Devonshire was the "local human resource representative for the Wilmington, Delaware office."[79] He also states that he was able to perform a "full and complete investigation" and that there was nothing he would have liked to have done during the investigation that he was unable to do.[80] So its own employee undermines VisionQuest's contention that Wagenhoffer's alleged mishandling of the sexual harassment complaint jeopardized its investigation.[81]

(36) These inconsistencies create genuine issues of material fact as to whether VisionQuest's offered reasons for termination were pretext.

(37) Accordingly, for the reasons stated, the Court finds that multiple issues of fact exist concerning Wagenhoffer's claim for discrimination based on gender (Count I), and summary judgment on that claim is **DENIED**.

---

[79] Yester Dep. 29 (**Q.** Who was Marlene Devonshire? **A.** She was the local human resource representative for the Wilmington, Delaware office . . . ).

[80] *Id*. at 34.

[81] *Id*. at 29.

**Count II**
*Retaliation*

(38) Retaliation claims brought under the DDEA are analyzed under the same *McDonnell Douglas* burden-shifting framework as described for a discrimination claim above.[82]

(39) The Court concludes that Wagenhoffer has established a *prima facie* case of retaliation under the DDEA. To establish unlawful retaliation, Wagenhoffer must show that: (1) she engaged in activity protected by the DDEA; (2) VisionQuest took an adverse action against her; and (3) there was a causal connection between the protected activity and the adverse action.[83]

(40) Wagenhoffer bases her retaliation claim on her March 24, 2013 email and March 26, 2013 meeting with DeVore and Rosica, during which she accused DeVore of creating a hostile work environment. Reporting a hostile work environment is a protected activity under the DDEA.[84] Wagenhoffer admits that she answered "no" when Rosica asked if she was making a hostile environment

---

[82] *Gary v. R.C. Fabricators, Inc.*, 2014 WL 4181479, at *24-25 (Del. Super. Ct. July 30, 2014).

[83] *Id*. (citing *Miller v. State, Dep't of Pub. Safety*, 2011 WL 1312286, at *12 (Del. Super. Ct. Apr. 6, 2011) and *Sappan v. Pennsylvania Board of Probation and Parole*, 152 F. App'x 211, 217 (3rd Cir. 2005)).

[84] DEL. CODE ANN. tit. 19, § 711(f) (2012) ("It shall be an unlawful employment practice for any employer . . . to discharge . . . or otherwise discriminate against any individual . . . on the basis of such person's race, marital status, color, age, religion, sex, sexual orientation, or national origin, [or] because such person has opposed any practice prohibited by this subchapter . . .").

complaint. However, when deposed, she explained that she answered this way out of fear for her job.[85] Thus, the Court concludes that an issue of fact exists as to whether Wagenhoffer was raising a harassment or work environment complaint warranting DDEA protection.

(41) As to the fourth factor, Wagenhoffer "can establish the requisite causal connection by showing [1] a close temporal proximity between the protected activity and the alleged retaliatory conduct or [2] by submitting 'circumstantial evidence . . . that give[s] rise to an inference of causation.'"[86] The Court notes that "[t]iming alone will not suffice to prove retaliatory motive."[87] But in this case, the temporal proximity between Wagenhoffer's hostile environment complaint and her termination (less than one month), coupled with DeVore's gender-biased comments and conduct described earlier, would permit a reasonable factfinder to infer a causal connection.[88]

---

[85]    Wagenhoffer Dep. 176-177.

[86]    *Conley v. State*, 2011 WL 113201, at *7 (Del. Super. Ct. Jan. 11, 2011) (quoting *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007)).

[87]    *R.C. Fabricators, Inc.*, 2014 WL 4181479, at *25 (that three weeks passed between the employee's complaint and her termination was not sufficient on its own to create a triable issue where the employee did not establish that the employer's alleged behavior constituted discrimination under the DDEA).

[88]    *Schatzman v. Martin Newark Dealership, Inc.*, 158 F. Supp. 2d 392, 403-04 (D. Del. 2001) (finding that plaintiff met his prima facie case for retaliation where he complained about racially derogatory comments one month prior to his termination).

(42)   Just as it did with Wagenhoffer's gender discrimination claim, the Court finds for the purposes of summary judgment that Wagenhoffer has rebutted VisionQuest's claimed legitimate nondiscriminatory reasons for termination.

(43)   Accordingly, Wagenhoffer has provided sufficient evidence from which a factfinder could reasonably infer that she was fired in retaliation for her complaints of a hostile work environment (Count II).   VisionQuest's summary judgment motion thereon is **DENIED**.

### Count III
### *Tortious Interference with Business and Contractual Relationships*

(44)   Wagenhoffer brings a claim for tortious interference with business and contractual relationships under sections 766A and 766B of the Restatement (Second) of Torts against DeVore individually.[89]

---

[89]     See Compl. ¶¶ 89-96.

The Restatement (Second) of Torts § 766A describes tortious interference with another's performance of his own contract as:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him.

The Restatement (Second) of Torts § 766A describes tortious interference with a prospective contractual relation as:

> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a

-22-

(45) Initially, DeVore argues that an at-will employee does not have a cause of action for tortious interference. This seems in conflict with the Delaware Supreme Court's holding in *ASDI, Inc. v. Beard Research, Inc.* where the Court observed that "tortious interference has been found actionable even where the third party is lawfully entitled to terminate a contract 'at will[,]'" and explicitly listing a case alleging "tortious conduct that induced the termination of at-will employment contracts" as actionable.[90] The Court emphasized that even when a contract has been terminated lawfully, a defendant still can be liable for tortious interference "where a defendant utilizes 'wrongful means' to induce a third party to terminate" it.[91] Thus, "[t]he focus of a claim for tortious interference with contractual relations is upon the *defendant's wrongful inducement* of a contract termination, not upon whether the termination itself was legally justified."[92]

(46) To prove her claim, Wagenhoffer must show all five elements of a tortious interference claim: (a) the existence of a contract (b) about which

---

third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation.

[90]  *ASDI, Inc.*, 11 A.3d 749, 751-52 (Del. 2010) (holding that the party's ability to terminate a contract lawfully "at-will" did not bar a claim for tortious interference); *Nelson v. Fleet Nat. Bank*, 949 F. Supp. 254, 261 (D. Del. 1996) (predicting that the Delaware Supreme Court would hold an action for tortious interference with contract may be maintained in conjunction with an at-will employment contract).

[91]  *ASDI, Inc.*, 11 A.3d at 751.

[92]  *Id*. (emphasis added).

defendant knew, and (c) an intentional act that is a significant factor in causing the breach of such contract (d) without justification, (e) which causes injury.[93] Tortious interference with business expectancy is largely the same as tortious interference with a contract, except a showing of an actual contract is not required.[94]

(47)   While DeVore states it is "questionable" whether Wagenhoffer had a contract with VisionQuest,[95] the Court presumes that Wagenhoffer had an employment contract for purposes of this motion.  Moreover, DeVore admits that Wagenhoffer had "a business relationship which was economically advantageous to her."[96]

(48)   Rosica was responsible for terminating Wagenhoffer's employment; thus she is the immediate cause of the breach of employment contract.  However, as discussed above regarding Wagenhoffer's retaliation claim, it is equally

---

[93]   *See Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 992 (Del. Ch. 1987) (citing Restatement (Second) of Torts § 766).

[94]   *Delaware Exp. Shuttle, Inc. v. Older*, 2002 WL 31458243, at *22 (Del. Ch. Oct. 23, 2002) ("The torts of interfering with existing contracts and interfering with prospective contracts are closely related both historically and in their required elements.").

In addition, § 766B permits the consideration of a defendant's "right to interfere with [plaintiff's] expectancies within the limits of fair competition." *All Pro Maids, Inc. v. Layton*, 2004 WL 1878784, at *6 (Del. Ch. Aug. 9, 2004), *aff'd*, 880 A.2d 1047 (Del. 2005).

[95]   Defs.' Br. at 33.

[96]   *Id*.

plausible, given DeVore's position, his presence in the March 26, 2013 meeting, and his gender-biased comments, that he influenced the decision to terminate Wagenhoffer's employment contract. Therefore, Wagenhoffer has raised a genuine issue of fact as to whether DeVore committed an intentional act that was a significant factor in causing the breach of such contract.

(49) As for the fourth element required under either claim, "Delaware courts have applied the rule set forth in the Restatement (Second) of Torts § 767 (1979)."[97] "The term 'improper,' as used in § 767, has essentially the same meaning as 'without justification' or 'without privilege.'"[98] The Restatement sets forth several factors to consider in determining whether an action is improper, including:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties.[99]

(50) In applying these factors to the instant case, factors (b), (d), and (f) are particularly relevant: Regarding factor (b), Wagenhoffer asserts that DeVore's

---

[97] *Hursey Porter & Associates v. Bounds*, 1994 WL 762670, at *13 (Del. Super. Ct. Dec. 2, 1994) (citations omitted).

[98] *Id*. at *14 (citations omitted).

[99] REST. (SECOND) OF TORTS § 767 (1979).

motivation in interfering with her employment contract stems from his desire to retaliate against Wagenhoffer for her complaint against him. Under factor (d), this is not a legitimate self, or other, interest in seeking the termination of an employment contract, and thus DeVore's actions were not justified. And Wagenhoffer raised her hostile work environment complaint less than one month prior to her termination -- establishing proximity under factor (f).

(51)   DeVore argues that he was acting in VisionQuest's best interest when critiquing Wagenhoffer's allegedly poor performance.[100] These arguments are largely repetitive of the legitimate nondiscriminatory reasons VisionQuest gives against the earlier claims; namely, that Wagenhoffer was unable to complete her work and mishandled the sexual harassment complaint. DeVore, therefore, argues that any interference on his part was justified.

(52)   Though VisionQuest may paint DeVore's actions as laudable, whether DeVore acted without justification is a factual dispute.

(53)   Accordingly, summary judgment on Wagenhoffer's claim against DeVore of tortious interference with her contract and business expectancy (Count III) is **DENIED**.

---

[100]   Defs.' Br. at 34-35.

(54)     Because, for the reasons set forth herein and on the record of the hearing of this motion, the Court finds that genuine issues of material fact exist, Defendants' Motion for Summary Judgment is **DENIED.**

**IT IS SO ORDERED.**

**/s/ Paul R. Wallace**
**PAUL R. WALLACE, JUDGE**

Original to Prothonotary

cc:  All counsel via File & Serve