ASDI, INC., Defendant
Below, Appellant,

v.

BEARD RESEARCH, INC. and CB
Research & Development, Inc.,
Plaintiffs Below, Appellees.

Michael J. Kates, Advanced Synthe-
sis Group, Inc., and Garry Smith,
Defendants Below, Appellants,

v.

Beard Research, Inc. and CB Research
& Development, Inc., Plaintiffs
Below, Appellees.

Alan Blize, Defendant
Below, Appellant,

v.

Beard Research, Inc. and Research &
Development, Inc., Plaintiffs
Below, Appellees.

Nos. 296/301/308, 2010.

Supreme Court of Delaware.

Submitted: Nov. 10, 2010.
Decided: Nov. 23, 2010.
Reargument Denied Dec. 16, 2010.

Barry M. Willoughby (argued) and Lauren E. Moak, Esquires, of Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware; for Appellant, Alan Blize.

Thomas P. Preston and Elizabeth Sloan (argued), Esquires, of Blank Rome, LLP, Wilmington, Delaware; for Appellant, ASDI, Inc.

John A. Elzufon, Esquire, of Elzufon Austin Reardon Tarlov & Mondell, P.A., Wilmington, Delaware; for Appellants, Michael J. Kates, Advanced Synthesis Group, Inc. and Garry Smith.

R. Karl Hill (argued), Patricia P. McGonigle, and Kevin A. Guerke, Esquires, of Seitz, Van Ogtrop & Green, P.A., Wilmington, Delaware; for Appellees.

Before HOLLAND, BERGER, and JACOBS, Justices.

JACOBS, Justice:

Before us are three consolidated appeals from a judgment of the Court of Chancery, entered after trial. The Court of Chancery adjudicated all but one of the defendants-below appellants jointly and severally liable to the plaintiffs-below appellees; and awarded appellees damages, including pre- and post-judgment interest, in the amount of $4,338,463.[1] The appellants are ASDI, Inc. ("ASDI"), Advanced Synthesis Group, Inc. ("ASG"), Michael J. Kates, Garry Smith, and Alan Blize. The appellees are Charles Beard Research and Development, Inc. ("CB") and Beard Research, Inc. ("BR").

The bases for the judgment are set forth in the opinions of the Court of Chancery issued on May 29, 2009 and April 23, 2010 and reported, respectively, at 981 A.2d 1175 (Del.Ch.2009) (the "Spoliation Opinion") and 8 A.3d 573 (Del.Ch.2010) (the "Merits Opinion"). In the Merits Opinion, the Court of Chancery determined that: (a) ASDI, ASG, Kates, and Smith misappropriated trade secrets belonging to CB and BR in violation of the Delaware Uniform Trade Secrets Act;[2] (b) Kates, aided and abetted by ASDI and Blize, breached his fiduciary duties to CB and BR; and that (c) ASDI, ASG, Blize, and Kates tortiously interfered with CB's and BR's prospective business relations with Pfizer, Inc. ("Pfizer") and other entities.

### ANALYSIS

Having considered the parties' contentions, advanced both in their extensive briefs and at oral argument, we conclude that the judgment of the Court of Chancery should be affirmed on the basis of its well-written Merits and Spoliation Opinions. We additionally affirm, however, on the alternative ground that ASDI, ASG, Blize, and Kates tortiously interfered with CB's and BR's contract with Pfizer. In its Merits Opinion, the trial court held that the plaintiffs had failed to establish a claim for tortious interference with contractual relations, because Pfizer was lawfully enti-

---

1. The sole exception is appellant Garry Smith, who was held jointly and severally liable for $668,544 of the $4,338,463 total amount.

2. 6 *Del. C.* § 2001 *et. seq.* ("the Act"). The trial court based its determination that the Act had been violated, in part and in addition to the evidence introduced at trial, upon an adverse inference from its finding that Kates and ASDI had spoliated evidence material to the Trade Secrets claim.

tled to (and did) terminate its contract with CB and BR. That ruling, in our view, interpreted too narrowly the nature and scope of a claim for tortious interference with contractual relations.

■ A third party's lawful termination of a contract with the plaintiff will not, of itself, bar a claim that the defendant tortiously interfered with that contract. The focus of a claim for tortious interference with contractual relations is upon the *defendant's* wrongful inducement of a contract termination, not upon whether the termination itself was legally justified. In this context, Delaware courts have consistently followed the Restatement (Second) of Torts,[3] which recognizes a claim for tortious interference with contractual relations where the defendant utilizes "wrong-

ful means" to induce a third party to terminate a contract.[4]

■ To be sure, the case law reflects that a defendant's tortious conduct that induces a third party to terminate a contract with the plaintiff *unlawfully* will suffice to establish a claim of tortious interference with contractual relations.[5] But it is not essential to this cause of action that the termination be unlawful.[6] Conduct amounting to tortious interference has been found actionable even where the third party is *lawfully* entitled to terminate a contract "at will." By way of example, tortious conduct that induced the termination of at-will employment contracts[7] and commercial contracts, such as an attorney-client relationship,[8] a marketing contract,[9] and a sawdust supply contract,[10]

3. RESTATEMENT (SECOND) OF TORTS §§ 766–67 (1979). *See also Grunstein v. Silva,* 2009 WL 4698541, at *16 (Del.Ch. Dec.8, 2009) ("Delaware generally follows the Restatement with respect to tortious interference."); *Hursey Porter & Assoc. v. Bounds,* 1994 WL 762670, at *13 (Del.Super.Ct. Dec.2, 1994) ("In evaluating allegations of tortious interference with contractual relations, Delaware courts have applied the rule set forth in the Restatement (Second) of Torts § 767 (1979)."); *Irwin & Leighton, Inc. v. W.M. Anderson Co.,* 532 A.2d 983, 992–93 (Del.Ch.1987) (relying on §§ 766–67 in identifying the elements of and framework for analyzing a tortious interference with contractual relations claim).

4. RESTATEMENT (SECOND) OF TORTS § 768(1)(b) ("One who intentionally causes a third person ... not to continue an existing contract terminable at will does not interfere improperly with the other's relation if ... (b) the actor does not employ wrongful means."). "Wrongful means" includes conduct "in violation of statutory provisions," such as the misappropriation of trade secrets that occurred here. *Id.* at § 767 cmt. c ("Conduct specifically in violation of statutory provisions or contrary to established public policy may for that reason make an inference improper.").

5. *Id.* at § 766; *see also id.* at cmts. l-m (illustrations # 2–3).

6. *See, e.g., Trimed, Inc. v. Sherwood Med. Co.,* 977 F.2d 885, 890 (4th Cir.1992) ("Maryland courts have consistently held that 'a person who intentionally and wrongfully hinders contract performance, as by causing a party to cancel the contract, and thereby damages a party to the contract, is liable to the injured party even if there is no breach of the contract.' ") (internal citations omitted).

7. *SliceX, Inc. v. Aeroflex Colo. Springs, Inc.,* 2006 WL 1699694, at *2–3 (D. Utah June 15, 2006) (holding that in the context of a tortious interference with an at-will employment contract, a plaintiff must show that the defendant used "improper means" to induce the third-party to terminate his or her at-will employment contract with the plaintiff).

8. *Lurie v. New Amsterdam Cas. Co.,* 270 N.Y. 379, 1 N.E.2d 472, 473 (1936); *see also Marks v. Struble,* 347 F.Supp.2d 136, 144 (D.N.J. 2004).

9. *Pure Milk Prod. Co-op. v. Nat'l Farmers Org.,* 64 Wis.2d 241, 219 N.W.2d 564, 574–75 (1974).

10. *Silva v. Bonafide Mills, Inc.,* 82 N.Y.S.2d 155, 156–57 (Sup.Ct.1948).

have been found actionable. If an "at will" contract is a permissible subject of a tortious interference claim, then so too must be any other contract, such as the Pfizer contract at issue here, that is terminated lawfully.

*Neyer, Tiseo & Hindo, Ltd. v. Russell* provides illustrative support.[11] There, the U.S. District Court for the Eastern District of Pennsylvania found two defendants liable for tortious interference with contractual relations where, while serving as fiduciaries for the plaintiff-company, the defendants intentionally and improperly interfered with the plaintiff's completion of an engineering project contract.[12] The defendants' tortious conduct included secretly meeting with the plaintiff's client to induce the client to transfer the contract to defendants' new company, and recruiting plaintiff's employees to join their new company.[13] That conduct caused the plaintiff's client to terminate-lawfully-the project contract, and resulted in the defendants being held liable for tortious interference.[14] *Neyer* supports the proposition that a lawful termination of a contract is not fatal to a claim of tortious interference with contractual relations.[15] Again, that is because the focus of the claim is on the defendant's wrongful conduct that induces the termination of the contract,[16] irrespective of whether the termination is lawful.

## CONCLUSION

For the reasons stated above, the judgment of the Court of Chancery is affirmed.

11. *Neyer, Tiseo & Hindo, Ltd. v. Russell*, 1993 WL 334951 (E.D.Pa. Aug.26, 1993).

12. *Id.* at *8.

13. *Id.* at *1–5.

14. *Id.* at *8.

15. In two unrelated cases the Superior Court appears to have concluded that a lawful termination of a contract cannot constitute a "breach" of that contract for purposes of a tortious interference with contractual relations claim. *Luscavage v. Dominion Dental USA, Inc.*, 2007 WL 901641, at *2 (Del.Super.Ct. Mar.20, 2007) (concluding that a "termination of a contract is not the same as breach of a contract.") (citing *Ariba, Inc. v. Elec. Data Sys. Corp.*, 2003 WL 943249, at *5 (Del.Super.Ct. Mar.7, 2003)). To the extent that those cases are inconsistent with our holding, they are overruled.

16. Restatement (Second) of Torts § 767 cmt. c ("The nature of the actor's conduct is a chief factor in determining whether the conduct is improper or not, despite its harm to the other person.").