# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN RE P3 HEALTH GROUP       )       Consol. C.A. No. 2021-0518-JTL
HOLDINGS, LLC               )

## ORDER DENYING SAMEER MATHUR'S MOTION TO DISMISS COUNT XI

1. Hudson Vegas Investment SPV, LLC ("Hudson") was a minority investor in P3 Health Group Holdings, LLC (the "Company"). In this litigation, Hudson has asserted various claims based on a transaction between the Company and a special purpose acquisition company, commonly known as a SPAC.

2. The defendants filed a surfeit of motions to dismiss on various grounds, including Rule 12(b)(6). The court has issued a decision addressing the breach of contract claims that Hudson asserted. Dkt. 172 (the "Contract Opinion," cited as "Contract Op."). The court also has issued a decision denying Mathur's motion to dismiss for lack of personal jurisdiction. Dkt. 168 (the "Mathur Opinion," cited as "Mathur Op."). This order incorporates those decisions by reference.

3. In Count XI of its complaint, Hudson has asserted a claim against Sameer Mathur for tortiously interfering with Hudson's contractual rights.

4. Delaware has adopted the formulation of a claim for tortious interference with contract that appears in the Restatement (Second) of Torts. *WaveDivision Hldgs., LLC v. Highland Cap. Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012); *ASDI, Inc. v. Beard Rsch., Inc.*, 11 A.3d 749, 751 (Del. 2010). Generally speaking, "[o]ne who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the

contract, is subject to liability to the other." Restatement (Second) of Torts § 766 (Am. L. Inst. 1979), Westlaw, (database updated Oct. 2022). Reframed as elements, a plaintiff must plead "(1) a contract, (2) about which defendant knew, *and* (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which causes injury." *Bhole, Inc. v. Shore Invs., Inc.*, 67 A.3d 444, 453 (Del. 2013) (internal quotation marks omitted).

5. The Contract Opinion has found that Hudson stated claims for breach of contract. *See* Contract Op. at 31, 41, 44, 60, 65, 74. It is reasonably conceivable that Mathur knew about the LLC Agreement and Hudson's contract rights.

6. As described in the Contract Opinion and in the Mathur Opinion, Hudson alleges that Mathur caused the Company to take actions that breached Hudson's rights under the LLC Agreement. *See id.* at 71–73; Mathur Op. at 8–10. It is reasonably conceivable that Mathur took those actions intentionally.

7. The final element is the issue of justification.

a. "The tort of interference with contractual relations is intended to protect a promisee's economic interest in the performance of a contract by making actionable 'improper' intentional interference with the promisor's performance." *Shearin v. E.F. Hutton Gp.*, 652 A.2d 578, 589 (Del. Ch. 1994). "The adjective 'improper' is critical. For participants in a competitive capitalist economy, some types of intentional interference with contractual relations are a legitimate part of doing business." *NAMA Hldgs., LLC v. Related WMC LLC*, 2014 WL 6436647, at *26 (Del. Ch. Nov. 17, 2014). "[C]laims for unfair competition and tortious interference must necessarily be balanced

against a party's legitimate right to compete." *Agilent Techs. v. Kirkland*, 2009 WL 119865, at \*8 (Del. Ch. Jan. 20, 2009). Determining when intentional interference becomes improper requires a "complex normative judgment relating to justification" based on the facts of the case and "an evaluation of many factors." *Shearin*, 652 A.2d at 589 (internal quotation marks omitted).

b.     The Delaware Supreme Court has adopted the factors identified in Section 767 of the Restatement (Second) of Torts as considerations to weigh when evaluating the existence of justification. *WaveDivision*, 49 A.3d at 1174. The factors are:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties.

*Id.* Weighing the seven factors identified in the Restatement requires the court to engage in a fact-specific inquiry to determine whether the interference with contract is improper under the particular circumstances of the case. *See* Restatement (Second) of Torts § 767 cmt. b ("[T]his branch of tort law has not developed a crystallized set of definite rules as to the existence or non-existence of a privilege . . . . Since the determination of whether an interference is improper is under the particular circumstances, it is an evaluation of these factors for the precise facts of the case before the court.").

c.     This court has previously addressed the role the weighing of factors plays in a claim for tortious interference with contract against a controller in *Bandera*

*Master Fund LP v. Boardwalk Pipeline P'rs, LP*, 2019 WL 4927053 (Del. Ch. Oct. 7, 2019). This court in *Bandera* stated:

> When the defendant that a plaintiff has sued for tortious interference controls an entity that was a party to the contract, the weighing of factors becomes more complex because of the need to balance the important policies served by a claim for tortious interference with contract against the similarly important policies served by the corporate form.

*Id.* at \*26. The *Bandera* decision explained further:

> A party who wishes to have a parent entity or other controller backstop the obligations of the controlled entity can do so by contract, either by making the parent a party to the agreement or by obtaining a guarantee. A party should not be able to use a claim of tortious interference with contract to reap the benefits of protections that it did not obtain at the bargaining table.

*Id.*

        d.     At the same time, Delaware's respect for corporate separateness means that Delaware maintains a role for tortious interference even when one entity controls another. For example, Delaware law rejects the theory that "a parent and its wholly owned subsidiaries constitute a single economic unit" such that "a parent cannot be liable for interfering with the performance of a wholly owned subsidiary." *Shearin*, 652 A.2d at 590; *accord Allied Cap. Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1038 (Del. Ch. 2006). Delaware law instead balances "the significant economic interest of a parent corporation in its subsidiary," including the parent's legitimate interest in consulting with its subsidiary, against the subsidiary's status as a separate entity and the interests of third parties in their contractual relationships with the subsidiary. *Shearin*, 652 A.2d at 590. The result is a limited affiliate privilege that protects a parent corporation that "pursues lawful action in the good faith pursuit of [the subsidiary's]

profit making activities." *Id.* Recognizing a limited affiliate privilege is "consistent with the traditional respect accorded to the corporate form by Delaware law . . . in that it does not ignore that a parent and a subsidiary are separate entities. Rather, it recognizes that the close economic relationship of related entities requires enhanced latitude in defining what 'improper' interactions would be." *Id.* at 590 n.13 (internal citation omitted).

e. Because these principles are grounded in the economic relationship between a parent entity and its subsidiary, or among affiliated entities, they logically apply to a claim asserting that the representative of the controlling member of an LLC tortiously interfered with the entity's LLC agreement by causing the entity to breach that agreement.

f. Here, because of the fact-intensive nature of this inquiry, it is not possible to determine at the pleading stage whether Mathur acted with justification when he negotiated on behalf of the Company, made decisions on behalf of the Company, gave instructions to the Company's management and its advisors, withheld information from the Hudson Managers, and otherwise took the actions described in the Mathur Opinion that contributed to the breaches of contract described in the Contract Opinion. It is reasonably conceivable that Mathur took at least some of these actions in a bad faith attempt to push through a transaction that was favorable to Chicago Pacific and which would serve Chicago Pacific's goal of eliminating Hudson's contractual veto rights.

8. Mathur argues that he acted as an agent of Chicago Pacific and therefore cannot be held liable for tortious interference with contract unless he exceeded the scope of his agency. For this proposition he relies on *Goldman v. Pogo.com Inc.*, 2002 WL

1358760, at *8 (Del Ch. June 14, 2002), *In re CVR Ref., LP Unitholder Litig.*, 2020 WL 506680, at *18 (Del. Ch. Jan. 31, 2020), and *OptimisCorp v. Waite*, 2015 WL 5147038, at *76 n.602 (Del. Ch. Aug. 26, 2015), *aff'd*, 137 A.3d 970 (Del. 2016). Mathur's argument is misplaced. Hudson is not arguing that Mathur induced a breach of Chicago Pacific's obligations. Hudson is arguing that Mathur induced a breach of the Company's obligations. Mathur had no official role or capacity with the Company that could entitle him to invoke this doctrine.

9.     Count XI states a claim on which relief can be granted against Mathur. His motion to dismiss Count XI is DENIED.

*/s/ J. Travis Laster*
Vice Chancellor Laster
November 9, 2022

- 6 -