# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

MARIC HEALTHCARE, LLC and              )
TEXAS TREATMENT SERVICES,              )
LLC,                                   )
                                       )
            Plaintiffs,                )
                                       )
      v.                               )      C.A. No. 2023-1062-NAC
                                       )
JACOB GUERRERO,                        )
                                       )
            Defendant.                 )

## MEMORANDUM OPINION

Date Submitted: April 23, 2024
Date Decided: June 14, 2024

Michael T. Manuel, John M. Seaman, ABRAMS & BAYLISS LLP, Wilmington, Delaware; *Counsel for Plaintiffs Maric Healthcare, LLC and Texas Treatment Services, LLC.*

Margaret F. England, Michael Van Gorder, GELLERT SEITZ BUSENKELL & BROWN LLC, Wilmington, Delaware; *Counsel for Defendant Jacob Guerrero.*

**COOK, V.C.**

This decision resolves the defendant's motion to dismiss (the "Motion"). The defendant served as the manager of a Delaware limited liability company operating an opioid treatment clinic. The plaintiffs—*i.e.*, the clinic-LLC and its sole member— allege that, while serving as the manager of the clinic-LLC, the defendant opened his own opioid treatment clinic, diverted the clinic-LLC's patients to it, and engaged in other competitive behavior.

The defendant filed the Motion seeking dismissal of all claims for lack of personal jurisdiction, improper venue, and failure to state a claim. On the facts alleged, well-settled Delaware law requires that I reject the defendant's personal jurisdiction and venue arguments. But, for the reasons set forth below, the Motion is granted in part for failure to state a claim.

## I. FACTUAL BACKGROUND

The facts set forth below are drawn from the Verified Complaint for Injunctive Relief and Damages (the "Complaint") and the documents it incorporates by reference or upon which it relies.[1]

### A. The LLC Agreement

Plaintiff Maric Healthcare, LLC ("Maric") is the "sole member of" Plaintiff Texas Treatment Services, LLC ("TTS"), which operates a Texas opioid clinic.[2] Both

---

[1] *See Teamsters Loc. 677 Health Servs. & Ins. Plan v. Martell*, 2023 WL 1370852, at *7 (Del. Ch. Jan. 31, 2023).

[2] *Maric Healthcare, LLC v. Guerrero*, C.A. No. 2023-1062-NAC, Docket ("Dkt.") 1 ("Compl.") ¶¶ 1–2, 9–10.

Maric and TTS are Delaware limited liability companies.[3] On April 1, 2017, TTS entered into a Limited Liability Company Agreement (the "LLC Agreement") with Defendant Jacob Guerrero, which designated Defendant by name as TTS's manager and president.[4]

As manager, the LLC Agreement provided Defendant with "full, complete, and exclusive authority and discretion, and the responsibility and duty" to, among other things, "control the business, policies, property, and affairs of the LLC."[5] The LLC Agreement also provided that Defendant would be "subject to the fiduciary duties that would be due by an officer or director of a Delaware corporation to such corporation," and that the LLC Agreement would be "governed by" and "construed in accordance with the laws of the State of Delaware, exclusive of its conflict-of-laws principles."[6]

## B. Alleged Competition

Plaintiffs allege that, in the second half of 2020, while serving as manager and president of TTS, Defendant began taking steps to establish "a competing opioid

---

[3] *Id.* ¶¶ 9–10.

[4] *Id.* Ex. A ("LLC Agreement") § 7 ("Management of the LLC shall be vested in the manager . . . , who shall initially be Jacob Guerrero."); *id.* § 6 ("[T]he Sole Member hereby forms the following office[] and appoints the following persons to such office[]: President Jacob Guerrero[.]"). Defendant signed the LLC Agreement as manager and president of TTS. *Id.*

[5] LLC Agreement § 7.1.

[6] *Id.* §§ 14, 17.

2

treatment center."[7]  First, on August 31, 2020, Guerrero and Jessica Robbins (then serving as TTS's medical director) filed a certificate of formation for a Texas limited liability company, TX OTP.[8]  The certificate of formation identified Guerrero and Robbins as managers of TX OTP.[9]

On September 24, 2020, "an assumed name certificate was filed with the Texas Secretary of State" identifying "MAT Texas" as the assumed name under which the business of TX OTP would be conducted.[10]  Guerrero signed the assumed name certificate.[11]

A Texas Franchise Tax Public Information Report, dated April 20, 2021, "was also filed with Texas Secretary of State on behalf of TX OTP."[12]  Guerrero signed the report, which identified Guerrero and Robbins "as members of Texas OTP."[13]

Plaintiffs allege that "[s]etting up an opioid treatment center requires substantial time and effort."[14]

> According to the Substance Abuse and Mental Health Services Administration (an agency within the U.S. Department of Health and Human Services) website, federal law requires, among other things, that

---

[7] *See* Compl. ¶¶ 24–25.

[8] *Id.* ¶¶ 12, 25.

[9] *Id.* ¶ 25.

[10] *Id.* ¶ 26.

[11] *Id.*

[12] *Id.* ¶ 27.

[13] *Id.*

[14] *Id.* ¶ 28.

an opioid treatment program be (i) both certified and accredited; (ii) licensed by the state in which it operates and (iii) registered with the Drug Enforcement Administration through its local DEA office.[15]

"Based on National Provider Identifier [("NPI")] records, TX OTP was certified as a healthcare provider on February 22, 2022."[16] NPI records "identify TX OTP as a methadone clinic" in Texas and "indicate that Guerrero is the Executive Director of TX OTP."[17]

Plaintiffs allege that in 2021, before receiving accreditation, Guerrero, Robbins, and former-TTS nurse Nikki Erb "conspired to transfer existing patients to the competing opioid treatment center."[18]

> The patients that were transferred did not require federal or state licensure to be treated, which is why these specific patients were chosen to transfer prior to receiving licensure. Approximately five days after effecting the transfer of the patients to the Guerrero/Robbins clinic, nurse Nikki Erb resigned from TTS and began employment at the competing clinic.[19]

According to Plaintiffs, on September 29, 2022, Maric terminated Defendant "for poor performance."[20] But Maric did not learn that Guerrero and Robbins "had set up the competing opioid treatment center" until November 2022—just over a

---

[15] *Id.*

[16] *Id.* ¶ 29.

[17] *Id.*

[18] *Id.* ¶ 4.

[19] *Id.*

[20] *Id.* ¶ 30.

month after terminating Defendant.[21]  Maric confirmed the "ownership of the new clinic and patient poaching" in a "discussion with Nikki Erb in or around November 2022."[22]

Plaintiffs thus allege that, "for at least two years (until his termination in September 2022), Guerrero, with Robbins's assistance, had been operating, in some capacity, TX OPT, which directly competes with TTS, while simultaneously acting as Manager and President of TTS."[23]

> Because Guerrero and Robbins concealed their competitive activities from Maric, the full extent of their involvement with TX OTP is not known to Plaintiffs at this time.  But Maric knows that Guerrero actively participated in the operations of TX OTP while simultaneously receiving a salary from Maric to act as Manager and President of TTS.[24]

Plaintiffs allege "on information and belief," that Defendant ultimately, "with the help of Robbins and Erb, facilitated the transfer of approximately 70 patients from TTS to TX OTP" and "caused at least five employees of TTS to leave for TX OTP."[25]

**C. Procedural History**

Maric filed the Complaint in this action on October 20, 2023, asserting four claims: breach of fiduciary duty, conversion, intentional interference with existing

---

[21] *Id.* ¶ 6.

[22] *Id.* ¶ 37.

[23] *Id.* ¶ 31.

[24] *Id.* ¶ 32.

[25] *Id.* ¶ 33.

contractual or prospective business advantages, and misappropriation of trade secrets under the Delaware Uniform Trade Secrets Act ("DUTSA").[26]

Defendant filed the Motion on December 4, 2023. Following briefing, I heard oral argument on April 23, 2024.

## II. LEGAL ANALYSIS

Defendant asserts three separate bases for dismissal of the claims against him: lack of personal jurisdiction, improper venue, and failure to state a claim. I address each in turn.

### A. Personal Jurisdiction

To satisfy personal jurisdiction requirements, a plaintiff must clear two hurdles: a statutory hurdle and a due process hurdle.[27] At oral argument, Defendant's counsel conceded that Plaintiffs satisfied the first hurdle under Delaware's consent to service statute for managers of Delaware limited liability companies.[28]

When considering the due process hurdle, this Court has recognized that "[a] chartering state has a strong interest in resolving disputes involving the internal affairs of the entities that it creates."[29] Thus, "[a]n individual who chooses to become

---

[26] *Id.* ¶¶ 39–58.

[27] *See In re P3 Health Grp. Hldgs., LLC*, 285 A.3d 143, 146 (Del. Ch. 2022).

[28] *See* Dkt. 19 ("OA Tr.") 14:9–13.

[29] *In re P3 Health Grp. Hldgs., LLC*, 285 A.3d at 147.

involved in the business and affairs of a Delaware entity must expect to be subject to suit in the courts of the chartering state for actions taken on the entity's behalf."[30]

Defendant argues "[t]here is no indication that [he] purposefully availed himself of the privilege of conducting activities in the State of Delaware."[31] Not so. "By becoming a [manager] of a Delaware [LLC, Guerrero] purposefully availed himself of certain duties and protections under our law."[32] As this Court explained in *In re P3 Health Group Holdings, LLC*, "when the action relates to a violation by the manager of a fiduciary duty owed to the LLC and its members, then the exercise of jurisdiction under Section 18-109 complies with due process."[33] There is no question this action relates to Guerrero's alleged breach of the fiduciary duties he owed as the manager of a Delaware LLC.[34] Accordingly, due process is satisfied.

---

[30] *Id.*

[31] *See* Dkt. 11 ("Def's OB") at 12 (internal quotation marks omitted).

[32] *Hazout v. Tsang Mun Ting*, 134 A.3d 274, 292 (Del. 2016) (citations omitted); *see Next Level Ventures, LLC v. AVID USA Techs. LLC*, 2023 WL 3141054, at *20 n.203 (Del. Ch. Mar. 16, 2023) (applying the Delaware Supreme Court's approach to 10 *Del. C.* § 3114 in *Hazout* for 6 *Del. C.* § 18-109). Indeed, Guerrero contractually agreed to serve as the president and manager of a Delaware LLC. *See* LLC Agreement §§ 6–7. He expressly bound himself to the fiduciary duties owed by directors and officers of Delaware corporations. *See id.* § 14. And he signed the LLC Agreement, which set forth a clear Delaware choice of law provision. *See id.* § 17; *cf. Next Level Ventures, LLC*, 2023 WL 3141054, at *25 n.235 (noting that "ties to Delaware" for due process purposes are strengthened "where contracts reflect[] the parties' intention that Delaware would resolve any disputes").

[33] *In re P3 Health Grp. Hldgs., LLC*, 282 A.3d 1054, 1072 (Del. Ch. 2022); *see also Next Level Ventures, LLC*, 2023 WL 3141054, at *25 n.235 (finding personal jurisdiction because "by becoming [managers] of a Delaware [LLC], the [defendants] purposefully availed [themselves] of certain duties and protections under our law, and the claims against them involve their actions in their official capacity" (third alteration added) (internal quotation marks omitted)).

[34] *See* Compl. ¶¶ 6, 39–44.

"From there, '[o]nce a defendant is subject to personal jurisdiction under 6 *Del. C.* § 18-109(a) as to certain claims, the Court may exercise personal jurisdiction over the defendant with respect to any claims that are sufficiently related to the cause of action.'"[35] "Sufficiently related [claims]" unquestionably include "those predicated on the same set of facts."[36]

Plaintiffs' remaining claims are predicated on the same facts concerning Guerrero's alleged competing activities. Although Plaintiffs' allegations are often thin or conclusory, as I discuss below, Plaintiffs allege Guerrero had access to trade secrets and removed property during his tenure and tortiously interfered "[u]sing his position as a fiduciary,"[37] all in connection with the alleged competitive activities that form the basis for Plaintiffs' breach of fiduciary duty claim.

Accordingly, I reject Defendant's personal jurisdiction argument.

**B. Venue**

"*Forum non conveniens* motions are addressed to the trial court's discretion."[38] To determine whether to dismiss an action under *forum non conveniens*, Delaware courts consider the following "*Cryo-Maid* factors":

> (1) the relative ease of access to proof; (2) the availability of a compulsory process for witnesses; (3) the possibility to view the premises, if appropriate; (4) all other practical problems that would make the trial easy, expeditious, and inexpensive; (5) whether the controversy is

---

[35] *Next Level Ventures, LLC*, 2023 WL 3141054, at *21 (citations omitted).

[36] *Id.*

[37] Compl. ¶ 51.

[38] *GXP Cap., LLC v. Argonaut Mfg. Servs., Inc.*, 253 A.3d 93, 97 (Del. 2021).

8

dependent upon Delaware law, which the courts of this State should decide rather than those of another jurisdiction; and (6) the pendency or non-pendency of a similar action in another jurisdiction.[39]

When a plaintiff files first in Delaware and there is no pending case elsewhere, "the defendant must show 'with particularity' that one or more of these factors, individually or together, *imposes an 'overwhelming hardship' on the defendant*" to obtain dismissal.[40] "It is insufficient that all of the *Cryo-Maid* factors may favor defendant or that another court would be a more appropriate forum."[41] "Indeed, only in a 'rare case' will a complaint filed in Delaware be dismissed on the grounds of *forum non conveniens*."[42] This comports with the notion that "[m]ost corporate litigation in the Court of Chancery involves companies and documents located outside of Delaware, and [so] mere inconvenience, without more, does not warrant a stay or dismissal."[43]

In an effort to meet its burden, Defendant asserts two primary arguments for dismissal. First, Defendant argues it would be easier to litigate in Texas because

---

[39] *Id.* at 101.

[40] *Mar-Land Indus. Contr., Inc. v. Caribbean Petroleum Ref., L.P.*, 777 A.2d 774, 778 (Del. 2001) (emphasis added) (quoting *Ison v. E.I. DuPont de Nemours & Co.*, 729 A.2d 832, 838 (Del. 1999)). At oral argument, Defendant's counsel agreed that "overwhelming hardship" is the "correct" standard for determining dismissal on *forum non conveniens* grounds in this action. OA Tr. 57:10–14.

[41] *Mar-Land Indus. Contr., Inc.*, 777 A.2d at 778 (quoting *E.I. DuPont de Nemours & Co.*, 729 A.2d at 838).

[42] *Id.* (quoting *E.I. DuPont de Nemours & Co.*, 729 A.2d at 842).

[43] *See Harris v. Harris*, 2023 WL 355179, at *12 (Del. Ch. Jan. 23, 2023) (quoting *Rosen v. Wind River Sys., Inc.*, 2009 WL 1856460, at *6 (Del. Ch. June 26, 2009)).

9

that is where some of the documents and witnesses are, the latter of which may require compulsory process to secure their attendance at trial.[44] Second, Defendant contends that this Court need not resolve the parties' dispute in this action because the application of Delaware fiduciary law will be straightforward and Texas law applies to the other claims.[45] But Defendant never connects either of these arguments to the imposition of an "overwhelming burden"—which, alone, is fatal.[46]

Even if considered for their substance, Defendant's arguments are to no avail. Although Defendant points to the location of witnesses in Texas, he fails to explain how the lack of compulsory process presents more than an inconvenience. Yet, our high court has explained that the lack of compulsory process over witnesses does not warrant dismissal absent some showing of how it burdens the party seeking dismissal—mere inconvenience is not enough.[47]

Likewise, Defendant does not assert that the location of documents in Texas gives rise to any sort of hardship, much less an "overwhelming hardship." As our courts have explained on many occasions, "[m]odern methods of information transfer render concerns about transmission of documents virtually irrelevant."[48] Moreover,

---

[44] *See* Def's OB at 13–15; Dkt. 16 ("Def's RB") at 10–11.

[45] *See* Def's OB at 14; Def's RB at 11–12.

[46] *See Mar-Land Indus. Contr., Inc.*, 777 A.2d at 778.

[47] *See Berger v. Intelident Sols., Inc.*, 906 A.2d 134, 136–37 (Del. 2006) ("[A]lthough it would be more convenient for [out of state] witnesses to give testimony [out of state], they could testify in Delaware by deposition or appear here voluntarily if requested . . . .").

[48] *Pipal Tech Ventures Priv. Ltd. v. MoEngage, Inc.*, 2015 WL 9257869, at \*6 (Del. Ch. Dec. 17, 2015) (internal quotation marks omitted).

10

Defendant never argues that this Court's application of Delaware fiduciary law or Texas tort law impairs him or otherwise constitutes an overwhelming hardship.[49] And, although stated in a different context, I note the text quoted above explaining Delaware's clear policy interest "in resolving disputes involving the internal affairs of the entities that it creates."[50]

Having considered Defendant's arguments carefully, I conclude that Defendant does not meet his burden of showing overwhelming hardship. This action is not the "rare case" in which a Delaware court may dismiss on *forum non conveniens* grounds.

### C. Failure to State a Claim

> The standards governing a motion to dismiss for failure to state a claim are well settled: (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are well-pleaded if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (i[v]) dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[51]

"We do not, however, simply accept conclusory allegations unsupported by specific facts, nor do we draw unreasonable inferences in the plaintiff's favor."[52]

---

[49] *See* Def's OB at 13–15; Def's RB at 9–12.

[50] *In re P3 Health Grp. Hldgs., LLC*, 285 A.3d at 147.

[51] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (footnotes omitted) (internal quotation marks omitted).

[52] *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009).

The parties agree that Delaware law governs the claim for breach of fiduciary duty, and Texas law governs the remaining claims.[53]

### 1. Breach Of Fiduciary Duty

For a claim for breach of fiduciary duty to survive a Rule 12(b)(6) motion to dismiss, the complaint "must sufficiently plead the existence of a fiduciary duty, and a breach of such a duty."[54] "By default, limited liability company managers owe fiduciary duties akin to those owed by directors of a corporation."[55] "Although Delaware law permits a limited liability company to eliminate fiduciary duties in the governing agreement, the LLC Agreement does not do so."[56] Quite to the contrary, Guerrero expressly agreed in the LLC Agreement that "[t]he Manager in his capacity as Manager shall be subject to the fiduciary duties that would be due by an officer or a director of a Delaware corporation to such corporation."[57] Plaintiffs' Complaint thus satisfies the first requirement for a breach of fiduciary duty claim.[58]

---

[53] *See* Def's OB at 14; OA Tr. 40:18–23.

[54] *Beach to Bay Real Est. Ctr. LLC v. Beach to Bay Realtors Inc.*, 2017 WL 2928033, at *5 (Del. Ch. July 10, 2017).

[55] *Mehra v. Teller*, 2021 WL 300352, at *28 (Del. Ch. Jan. 29, 2021) (citing 6 *Del. C.* § 18-1104); *accord Auriga Cap. Corp. v. Gatz Props.*, 40 A.3d 839, 851 (Del. Ch.), *aff'd*, 59 A.3d 1206 (Del. 2012); *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 661 (Del. Ch. 2012) ("[T]he Delaware Limited Liability Company Act . . . contemplates that equitable fiduciary duties will apply by default to a manager or managing member of a Delaware LLC.").

[56] *Mehra*, 2021 WL 300352, at *28 (citing 6 *Del. C.* § 18-1101(e)).

[57] LLC Agreement § 14.

[58] Compl. ¶ 21 (quoting LLC Agreement § 14); *accord id.* ¶¶ 2, 40.

As to the second requirement, "[a] breach of fiduciary duty occurs when a fiduciary commits an unfair, fraudulent, or wrongful act, including . . . solicitation of employer's customers before cessation of employment" and "conspiracy to bring about mass resignation of an employer's key employees."[59] Plaintiffs adequately allege this, too.[60]

Defendant asserts (1) the allegations of patient poaching are not pled with "specificity" since they are pled on "information and belief" and (2) Plaintiffs fail to allege the breaching conduct occurred while Defendant was employed by TTS.[61] Plaintiffs counter that (1) "Delaware law permits pleading facts on information and belief when the complaint includes further factual allegations to support that belief" and (2) the Complaint's description of the "two-year-long history of Guerrero setting up and operating a competing opioid clinic while a fiduciary . . . state[s] a claim for breach."[62]

To be sure, certain facts surrounding the diversion of customers are alleged, at least in part, on information and belief.[63] But Plaintiffs have sufficiently pled other, unchallenged facts to make it reasonably conceivable that Defendant breached his fiduciary duty by soliciting TTS's patients during his employment. For example,

---

[59] *Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 602 (Del. Ch.), *aff'd*, 11 A.3d 749 (Del. 2010).

[60] Compl. ¶¶ 3–5, 24–33, 41–42.

[61] *See* Def's OB at 17.

[62] Dkt. 15 ("Pls' AB") at 21–22.

[63] *See, e.g.*, Compl. ¶ 33.

Plaintiffs allege Defendant was fired on September 29, 2022.[64] And Plaintiffs allege Erb confirmed suspicions of patient poaching in November 2022, just over one month after Defendant's termination.[65] Given the close temporal proximity between Defendant's termination and Plaintiffs' allegedly confirmatory conversation with Erb about the patient poaching, it is reasonably conceivable that Defendant diverted at least some portion of the seventy alleged patients to TX OTP before his termination.[66]

As I must at this stage, I draw all reasonable inferences in Plaintiffs' favor. Notice pleading is not an onerous requirement, and the facts alleged provided Defendant with the requisite notice to marshal his defense. Accordingly, I must reject Defendant's challenges to this first claim.[67]

---

[64] *Id.* ¶ 30.

[65] *Id.* ¶ 37.

[66] Separately, Defendant does not challenge Plaintiffs' allegation that he "caused at least five employees of TTS to leave TTS to work for TX OTP." *Id.* ¶ 33. *Compare id.*, *with Beard Rsch., Inc.*, 8 A.3d at 602.

[67] That said, Defendant's assertion is well-taken that Plaintiffs cannot bring a breach claim for acts Defendant took when he owed them no fiduciary duty. Even Plaintiffs concede "that setting up to begin to compete after you are no longer a fiduciary is permitted." OA Tr. 34:13–16. Plaintiffs' Complaint is not a model of clarity. But I also am "not a robed gardener" required to "prune individual theories from an otherwise healthily pled claim." *InVentiv Health Clinical, LLC v. Odonate Therapeutics, Inc.*, 2021 WL 252823, at *4 (Del. Super. Jan. 26, 2021). As Plaintiffs' claim arises in equity, Defendant might also conceivably question where the equities lie in restricting access to treatment for substance abuse and addiction. Plaintiffs might respond that, but for the profit motive, there would be no TTS clinic in the first place. Although I acknowledge them, such considerations do not affect my analysis at this pleading stage.

14

## 2. Conversion

In Texas,

> [t]he elements of conversion are: (1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights; and (3) the defendant refused the plaintiff's demand for return of the property.[68]

For conversion, Plaintiffs allege Defendant "removed, without permission, Plaintiffs' confidential and propriety [*sic*] documents."[69] Plaintiffs continue that, "[b]y such removal, [Defendant] wrongfully exercised dominion over and converted Plaintiffs' property."[70] If the foregoing seems like a summary of Plaintiffs' conversion allegations, it is not. That is basically the extent of the allegations.[71]

Defendant correctly argues the Complaint never identifies the "confidential, proprietary materials" Defendant converted, making the allegation conclusory.[72] In their answering brief, Plaintiffs weakly respond that Defendant should understand the converted materials to be unidentified "customer lists and policies and procedure manuals."[73] But Plaintiffs concede the Complaint's sole reference to customer lists and policies and procedure manuals appears in the text of Plaintiffs'

---

[68] *Freezia v. IS Storage Venture, LLC*, 474 S.W.3d 379, 386–87 (Tex. App. 2015).

[69] Compl. ¶ 46.

[70] *Id.* ¶ 47.

[71] *See id.* ¶¶ 45–48.

[72] Def's OB at 18.

[73] Pls' AB at 23 (internal quotation marks omitted).

15

misappropriation of trade secrets count, which is identifiably not incorporated in Plaintiffs' conversion allegations.[74]

Plaintiffs' bare allegations fail to give Defendant notice of the documents or property Plaintiffs claim he converted. In the Complaint, Plaintiffs fail to tie even a single, non-conclusory fact to their conversion claim. Although not an onerous standard, notice pleading is not a non-existent requirement. Here the Complaint does not give Defendant adequate notice so that he is afforded a fair opportunity to respond.

Plaintiffs cannot retroactively patch their threadbare conversion claim by asserting an unpled explanation, namely that Defendant should understand Plaintiffs' DUTSA claim as cross-applied to Plaintiffs' conversion claim. Indeed, even the need for such after-the-fact explanations is itself a clear indicator that the Complaint does not satisfy the manifestly low threshold housed in the notice pleading requirement. And absent Plaintiffs' attempts at clarification through briefing, I am left with skeletal assertions of the elements of the claim. But "[i]f a complaint were held sufficient simply because it restates the legal elements of a particular cause of action, Rule 8(a) would be rendered meaningless."[75] Accordingly, I must grant the Motion as to Plaintiffs' conversion claim.

---

[74] *Id.*; *see also* Compl. ¶¶ 45, 54–58.

[75] *In re Coca-Cola Enter., Inc.*, 2007 WL 3122370, at *7 n.28 (Del. Ch. Oct. 17, 2007).

16

### 3. Tortious Interference

In Count III, Plaintiffs attempt to plead a claim for "intentional interference with existing contractual relationships and prospective business advantage."[76] On its face, this seems to be two potentially separate causes of action. The first, tortious interference with an *existing* contractual relationship, unsurprisingly requires that a plaintiff plead the existence of a contract with which the defendant is alleged to have interfered.[77]

Here, Defendant correctly argues the Complaint lacked any allegation that "there was a contract that obligated the patients to receive treatment from TTS either at the time that the patients left the facility or in the future."[78] Plaintiffs offer no response other than to suggest that such a pleading failure is not fatal to the second potential claim housed in Count III—tortious interference with a *prospective* business relationship.[79] Accordingly, to the extent Plaintiffs' claim is based on interference with existing contractual relationships, they have failed to state a claim in that regard.[80]

---

[76] Compl. ¶¶ 49–53 (capitalization altered).

[77] *See Hart v. Manriquez Hldgs., LLC*, 661 S.W.3d 432, 439 (Tex. App. 2023) (observing that, among other things, one must plead "the existence of a valid contract" in order "to establish a claim for tortious interference with contract").

[78] *See* Def's OB at 20.

[79] *See* Pls' AB at 23–24.

[80] *See In re Crimson Expl. Inc. S'holder Litig.*, 2014 WL 5449419, at *8 (Del. Ch. Oct. 24, 2014) ("Failure to plead an element of a claim precludes entitlement to relief and, therefore, is grounds to dismiss that claim.").

17

The latter claim housed in Count III, however, survives the Motion.[81] Defendant raises his only remaining challenge to Count III in a single, three-sentence paragraph in which he confusingly asserts that "Plaintiffs fail to plead in the Complaint what it [*sic*] wants the Court to infer—that a patient who was at their clinic was likely to stay at the clinic."[82]

But things that are inferred are, by their very nature, not express. To the contrary, inferences are necessarily conclusions that are "derived" from "facts or premises."[83] One would have to ignore the pleading standard altogether to conclude that the reasonable inferences to which Plaintiffs are entitled at this stage must be expressly stated in the Complaint to survive a motion to dismiss.

---

[81] To state a claim for tortious interference with prospective business relations under Texas law, a plaintiff must adequately allege:

> (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.

*Cantu v. Falcon Int'l Bank*, 2018 WL 1831651, at *3 (Tex. App. Apr. 18, 2018).

[82] Def's RB at 16. I note the parties addressed neither the interplay of Defendant's fiduciary status with a tortious interference claim, nor Defendant's privilege to compete with a former employer in a fair and lawful manner. *Cf. Triton Const. Co. v. E. Shore Elec. Servs., Inc.*, 2009 WL 1387115, at *30 (Del. Ch. May 18, 2009) (applying Delaware law) (holding employee liable "for breach of . . . fiduciary duties . . . and tortious interference with prospective economic advantage" based on individual's competitive conduct moonlighting part-time for direct competitor), *aff'd*, 988 A.2d 938 (Del. 2010); *Beard Rsch., Inc.*, 8 A.3d at 608 (applying Delaware law) ("[Tortious interference with prospective business relations] 'must be considered in light of a defendant's privilege to compete or protect his business interests in a fair and lawful manner.'" (citation omitted)).

[83] *Infer*, THE MERRIAM-WEBSTER DICTIONARY (2022).

18

Moreover, I have already determined that it is reasonably conceivable Defendant solicited Plaintiffs' patients during his employment. Here, I further conclude it is reasonably conceivable that at least some of the seventy patients Defendant allegedly solicited would have returned to TTS for treatment, absent the alleged solicitation.[84]

Accordingly, I must reject Defendant's remaining argument since, as Plaintiffs note, a claim for tortious interference with prospective business relationships only requires a party to plead facts from which it can be reasonably *inferred* that there existed "a reasonable probability of a business opportunity."[85] Plaintiffs have done so, and Defendant raises no valid objection.

### 4. Trade Secrets (DUTSA)

Plaintiffs' counsel conceded at oral argument that this claim is governed by Texas law and that Plaintiffs only bring this claim under Delaware law.[86] Nonetheless, Plaintiffs argue that "Texas has adopted the Uniform Trade Secrets Act."[87] So, they continue, if the Court finds that the Complaint states a claim under DUTSA, then it likely also states a claim under Texas law.[88]

---

[84] Here, the inertial nature of human behavior seems, at the very least, reasonably conceivable—if not, to some degree, inevitable.

[85] *See Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

[86] *See* OA Tr. 41:1–24 ("[P]laintiffs' position would be that the complaint does reference DUTSA, and Texas law applies to it.").

[87] *Id.* 41:23–24.

[88] *See id.* 42:1–5.

First, Plaintiffs plainly did not make this argument in their briefing.[89] Second, behind Plaintiffs' concededly "muddled"[90] argument waves a white flag. Plaintiffs admit Delaware law does not apply. Thus, the claim, expressly brought under Delaware statute,[91] is admittedly not one under which Plaintiffs are "entitled to relief."[92] The Court bears no duty here to spin counsel's straw into gold.[93] Accordingly, this claim is dismissed.

## III. CONCLUSION

For the foregoing reasons, the Motion is denied as to Plaintiffs' claim for breach of fiduciary duty (Count I); it is granted as to Plaintiffs' conversion and DUTSA claims (Counts II and IV); and it is granted in part as to Plaintiffs' tortious interference claim (Count III), to the extent it seeks to assert a claim for tortious interference with existing contractual relationships. The parties are to confer on a form of order implementing this decision.

---

[89] *See* Pls' AB at 24–25.

[90] *See* OA Tr. 42:2.

[91] Compl. ¶ 54 (alleging "[t]his information constituted trade secrets belonging to Plaintiffs under 6 *Del. C.* § 2001").

[92] *See* Ct. Ch. R. 8(a).

[93] *See Rudd v. Brown*, 2020 WL 5494526, at *12 (Del. Ch. Sept. 11, 2020).

20